Beard v. State.

| 43 | 284 |
| 54 | 350 |

BEARD v. STATE.

1.  SELLING MORTGAGED PROPERTY: *Mortgage; Interest in crop.*
    A cropper on shares has such an interest in the crop as is the subject of mortgage, and for the sale of which, when mortgaged, and the mortgage recorded, he will be guilty of a felony.

2.  SAME: *Intent.*
    In order to find one guilty of selling mortgaged property, it is not necessary that the jury find that he sold it with the felonious intent to deprive the mortgagee of his debt.
    EAKIN, J., dissenting.
    NOTE.—The mortgage in this case was duly recorded.—*Reporter.*

APPEAL from *Baxter* Circuit Court.

Hon. R. H. POWELL Circuit Judge.

*J. L. Abernethy* for appellant.

*C. B. Moore,* Att'y Gen'l, *contra.*

The indictment is in almost the exact words of the statute, and the motion in arrest was properly overruled. *Acts* 1874–5 *p.,* 129–130. The mortgage was duly *filed* and " abstracted under the Act of 1877, and the evidence clearly shows that defendant both sold and bartered personal property upon which there was a duly recorded mortgage. The Act makes it a crime, and no intent to defraud need be proved.

COCKRILL, C. J. Appellant was tried and convicted under an indictment in two counts, charging him in one, with selling, and in the other, with bartering, parts of a crop of cotton which he had previously mortgaged. The indictment contained all the averments necessary under the statute to a full description of the offence, and the proof was sufficient to every point. The court instructed the jury fairly and almost in the language of the statute.

The apellant asked two instructions, however, which the court refused. The first was upon the theory that if appellant planted the crop in question as " a cropper on shares," he had no interest in it which he could mortgage, and he should be acquitted. This was properly refused.

By the common law a mortgage of chattels not in *esse* or thereafter to be acquired by the mortgagor was void. This rule has, however, been practically anulled in this and some other States by the incorporation of the principle of the Civil Law on this subject into our equity jurisprudence. Such a mortgage can be recorded with like effect as other chattel mortgages and equity will enforce it without question whenever there is anything for the

Beard v. State.

mortgage to take hold of. *Apperson v. Moore* 30 *Ark.*, 57; *Hendrick v. Britain*, 63 *Ind.*, 438.

This was true of a mortgage by a " cropper on shares" of his crop prior to the Act of Feb. 11th, 1875. *McGee v. Fitzer*, 37 *Texas*, 27; *Potts v. Newell*, 22 *Minn.*, 561; 1 *Wash., R. P.*, *365. This Act put an end, in this State, to the unseemly conflict between law and equity in respect to mortgages of unplanted or immature crops, by making them good at law as well as in equity. *Jarrett v. McDaniel*, 34 *Ark.*, 598.

2. CRIMI-  The second instruction was to the effect that the jury
NAL IN-
TENT.      must find that appellant disposed of the mortgaged property, with the felonious intent of depriving the mortgagee of his debt, before they could find a verdict of guilty.

The legislature " have the unquestioned right, so long as they keep themselves within the pale of the Constitution, to command the performance of such acts as are right, and to prohibit such .as they may conceive to be wrong, and their right is equally indisputable to say whether the intention shall be presumed from the mere act prohibited, or whether in addition to that act the State shall also show the intent which prompted its commission." *Shover v. State,* 10 *Ark.*, 264.

The statute upon which the indictment in this case is based, makes it a crime to dispose of personal property, under particular circumstances. When a party voluntarily does the act prohibited, he is charged with the criminal intent of doing it, and no other or further intent need be shown. *Seelig v. State ante* 96; *U. S. v. Ulrice*, 3 *Dillon*, 532; *Com. v. Mash*, 7 *Met.*, (*Mass.*) 472.

It was not error to refuse to instruct the jury as asked. Affirmed.

Beard v. State.

Dissenting opinion by

EAKIN, J. The defendant was a cropper, making a crop upon the land of another, for an aliquot portion, and using the team and tools of the land-owner for the purpose.

I concur with the court in the view that our statute, on the subject of removing, selling, bartering or disposing of mortgaged property, includes equitable as well as purely legal liens. Both are within the letter, as well as the spirit and mischief of the Act. There was no error in refusing the instruction on that point.

I think, however, that the jury should have been left free to consider of the intention to defraud the mortgagee, and that, therefore, the court erred in refusing to instruct the jury that they must believe from the evidence that defendant had such felonious intent.

It is true the statute is silent as to the intent, but the mischief aimed at, indeed the only conceivable mischief which could result from the sale of mortgaged property, is the fraud upon the creditor in depriving him of his debt. Criminal statutes, according to well-settled principles are to be construed strictly in favor of defendants, under indictments to punish. The construction should be, says Mr. BISHOP, " as far as possible, in harmony with *their policy*, and the common law." *Statutory Crimes, Sec.* 141. Moreover, " a statute will not generally make an act criminal, *however broad may be its language,* unless the offender's intent concurred with the Act." *Ib., Sec.* 132. This intent does not refer to the doing of the act, but to the evil motive, as illustrated by the case of an act making it capital to draw blood in the streets. This was held not to apply to a surgeon who bled a man who had fallen in a fit, although he intentionally did the very act which the statute prohibited. But he had no felonious intent

to perpetrate the crime, which the statute aimed at which was to draw blood by assault.

The statute in judgment is in derogation of the common law, and in some respects peculiar. It makes it felony to sell, what it would only be a misdemeanor to steal, as to all things within the limits of value governing petit larceny. If, in this case, the defendant had stolen from the mortgagee, all that the proof shows he sold, he would not be guilty of felony.

It may be well apprehended that if strictly construed without reference to evil intent, it may reach consequences which would shock the sense of Justice and confuse all ideas of distinction between crime and innocence. If the doing of the prohibited act, with intent to do it, be, alone, conclusive of guilt, and the jury be precluded from all consideration of intent to defraud, then the most overwhelming necessity, with ample provision for meeting the debt from other sources, can never be shown. One who had given a large mortgage of personal property to secure a debt and then paid the debt to the smallest estimable balance, could not sell the smallest portion of it under any emergency, for the mortgage would cover all for the balance.

Upon the other hand I see no evil to arise from entrusting juries with the consideration, in each case, of the evil intent. Generally they are astute enough, with their knowledge of human motives and experience of human conduct, to detect an intent to defraud, or to recognize an innocent intent. Laws are to be reasonably interpreted, so as not to reach absurd results. I think it reasonable to apply to this statute the common law doctrine that no acts are felonious not done with felonious intent.

My opinions as to the proper construction of the statute, are strengthened by the circumstances of this case.

As I view the evidence, it shows that the defendant was a very poor man, dependent wholly, for daily bread, on daily labor, with a wife who had been sick for most of the year. He paid the mortgagee the greater part of the debt, and sold a very small portion of the crop, in the seed, to procure a little beef, some other necessaries, and a cheap door shutter. He then agreed with the mortgagee to work out the balance of the debt, which was less than twenty dollars, with the mortgagee's father. The mortgagee, knowing the facts, agreed to be satisfied with that, and, from anything that appears, the labor may have been performed. For this, he is to bear the brand, through life, of a convicted felon, besides serving a year in the penitentiary.

Notwithstanding the hardship to himself and the invalid wife, it must be concluded that if he acted with intent to defraud his creditor, the conviction is legal and proper. But I am not sure the jury would have thought that he did, and I believe on a fair and reasonable construction of the law, by its manifest policy, and with a view to the mischief it was intended to suppress, it ought to have been left with them to say.

I think there ought to be a new trial, and that the jury should have the instruction asked.