## TINSLEY *v.* CRAIGE.

Decided March 21, 1891.

1. *Landlord and employee—Lien for advances.*

   The ownership of the crop is not the test of employment, in the act of April 6, 1885, which gives a landlord a lien on the crop raised on the premises for advances to his employee; where a landlord and laborer agree that the former shall furnish the land, team and tools, and the latter do the work, to make a crop, of which they are to be tenants in common, the latter is an employee, within the meaning of the act.

2. *Landlord's lien—Waiver.*

   Under the act of March 21, 1883 (Mansf. Dig., sec. 4452), a landlord may waive his lien for advances to an employee only by written indorsement upon the mortgage or other instrument by which the employee transfers his interest in the crop.

3. *Repeal of inconsistent acts—Construction.*

> Where an act contains a clause repealing all inconsistent acts, it will be held, in the absence of a clear intention otherwise manifested, not to revise, and consequently repeal by implication, prior acts relative to the same subject and not inconsistent with its provisions; the legislature having expressly prescribed its operation, no other effect can be given to it.

APPEAL from *Jackson* Circuit Court.

J. W. BUTLER, Judge.

Attachment to enforce a landlord's lien. The facts are fully stated in the opinion.

The appellant *pro se.*

1. Craige's mortgage was void for uncertainty, and should not have been admitted in evidence. 41 Ark., 70;

2. Dunn was a mere share-cropper, and had no interest he could mortgage until his part was set off to him. 32 Ark., 436; 48 *id.*, 264; 34 *id.*, 687.

3. The mortgage was made without Tinsley's consent. Mansf. Dig., sec. 4452.

4. The parties were not tenants in common. 46 Ark., 254; 48 Ark., 295.

5. The landlord's lien is paramount to a mortgage. 51 Ark., 222; 48 Ark., 264, 295; Mansf. Dig., sec. 4452; Acts 1885, p. 225, sec. 1. The lien exists whether the parties are landlord and tenant, or employer and employee.

*Jno. W. & Jos. M. Stayton* for appellees.

1. Unless Dunn and Tinsley were landlord and tenant, the act of 1885 does not apply. The evidence shows them to be "*share-croppers,*" and tenants in common of the crop 33 Ark., 436; 34 *id.*, 179; 34 *id.*, 687; 48 *id.*, 624; 46 *id.*, 254.

COCKRILL, C. J. Dunn raised a crop of cotton on Tinsley's land under a parol contract which both parties denominated a contract upon the shares. Tinsley stated the terms of the contract in the following language, viz.: "I was to furnish the land, team, tools, and feed for team, and Dunn was to do the work in making the crop. Each one was to gather his

1. What is an employee?

half of the crop as near as practicable, and, after being gathered and hauled to the gin, if there was any difference, it was to be equalized. Dunn was to pay me out of his half for what he got from me." A part of the crop was removed from the premises, when Tinsley caused the residue to be attached in the field for the purpose of enforcing the landlord's lien for supplies furnished Dunn. The lien was asserted under the following provision of the act of April 6, 1885 (Acts 1885, p. 225), viz.: "In addition to the lien now given by law to landlords, if any landlord, to enable his tenant or employee to make and gather the crop, shall advance such tenant or employee any necessary supplies, either of money, provisions, clothing, stock, or other necessary articles, such landlord shall have a lien upon the crop raised upon the premises for the value of such advances, which lien shall have preference over any mortgage or other conveyance of such crop made by such tenant or employee. Such lien may be inforced by an action of attachment before any court or justice of the peace having jurisdiction, and the lien for advances and for rent may be joined and enforced in the same action." Craige intervened and claimed Dunn's interest in the cotton; and the main question for determination is, Was Dunn either a tenant or employee of Tinsley, within the meaning of the act? If he occupied either of those relations, the act applies and the lien exists. If he occupied neither, it is immaterial to Tinsley whether Craige is the rightful owner of the cotton or not.

Inasmuch as the possession of the land was not surrendered, and the contract vested no interest in it in Dunn, he was not a tenant, within the meaning of the previous decisions of this court. *Hammock* v. *Creekmore*, 48 Ark., 264, and cases cited.

Is he an employee within the meaning of the act? It is obvious that the act can apply only to that class of employees who have an interest in the crop, for it confers a lien upon the crop only. A cropper on shares has such an interest and is an employee, within the meaning of the act.

The court charged the jury that the landlord had no lien for supplies against a cropper on shares. That was prejudicial error, if the evidence would justify the finding that Dunn was a share-cropper.

In attempting to ascertain the relation in which the parties stood to each other, the circuit court at the trial made the ownership of the crop the test, and charged the jury, among other things, that if they found that the landowner and the occupant were tenants in common of the crop, no lien existed, and they should find against the landlord.

Ordinarily when the parties occupy the relation of landlord and tenant, the title to the crop is in the tenant, and he pays the landlord rent in kind or otherwise; and in general where they occupy the relation of landlord and cropper on shares, the title to the crop is in the landlord, and he delivers a part of it to the cropper in payment of his services. But the title to the crop is not the criterion for determining the relation that exists between the parties. That is governed by their intent, and is determined by the terms of their contract. If there is a demise or renting of the premises, with a stipulation that the landlord shall receive his rent by becoming an owner in an undivided interest in the crop, the relation of landlord and tenant exists as to the premises, and the parties are tenants in common of the crop. *Putnam* v. *Wise*, 37 Am. Dec., 309, and note p. 318; *Johnson* v. *Hoffman*, 53 Mo., 504.

And so if the landlord employs a laborer to make a crop, under an agreement that he is to have an undivided share of it as his wages, the relation of employer and employee is established. That was recognized in *Sentell* v. *Moore*, 34 Ark , 687–690, where it was held that it was to such cases that a provision of another act giving the landowner a lien upon the crop of his laborer was intended to apply. Mansf. Dig., sec. 4452. Where the title to the whole crop is in the landowner, and by the terms of the contract he is to pay the employee who labors in the crop only what is left of it after deducting the amount due for supplies furnished to

make it and for the use of the land, team and tools, there is no necessity for legislation to protect his interests. In such cases the cropper can sell or mortgage only the inter- est remaining after the landlord's demands are satisfied. *Beard* v. *State*, 43 Ark., 284. The landlord has therefore the remedy for his protection in his own hands.

In former decisions of this court where stress has been laid on the fact that the landowner and occupant were tenants in common of the crop, it was to distinguish their title to or interest in the crop from the ordinary incidents of ownership that exist as between landlord and tenant and landowner and cropper, in order to determine the reme- dies of the parties in suits about the crop, or to ascertain their respective interests in it, and not for the purpose of determining their relation to each other. *Bertrand* v. *Taylor*, 32 Ark., 470; *Ponder* v. *Rhea*, *ib.*, 435; *Hammock* v. *Creek- more*, 48 Ark., *supra*.

Under the contract as stated above Dunn was a cropper on shares under Tinsley, and a tenant in common of the cotton raised on the land. It is immaterial whether the cotton was to be divided in the field before it was picked or afterwards at the gin. That was the subject of contract between the parties, and did not control the relation between them. As Dunn was a cropper on shares, he was an em- ployee, within the letter and spirit of the act; and Tinsley had a lien on his share of the crop for supplies furnished to enable him to make it, which he could not defeat by sale or otherwise without Tinsley's assent. *Parks* v. *Webb*, 48 Ark., 293. The court erred therefore in its charge to the jury.

Reverse the judgment and remand the cause for a new trial.

OPINION ON MOTION FOR REHEARING.

Filed May 23, 1891.

2. Waiver of landlord's lien. COCKRILL, C. J. It is argued that the judgment should be affirmed, notwithstanding the error in the court's charge above specified, upon the ground that the appellant had

waived his lien for supplies upon the crop of his employee in favor of the appellee, by inducing the latter to furnish supplies to the employee under the belief that he would not exercise his privilege as landlord to acquire the superior lien by furnishing the supplies himself. See *Coleman* v. *Siler,* 74 Ala., 435 ; *Hammond* v. *Harper,* 39 Ark., 248. But the statute specifies that the evidence of the waiver of the landlord's lien for supplies shall be in writing by indorsement upon the mortgage or other instrument by which the employee transfers his interest in the crop. Mansf. Dig., sec. 4452. There is no testimony to the effect that there was such a release, and the charge of the court upon that branch of the case was erroneous.

But it is argued that the act of April 6, 1885, cited in the opinion in chief, repeals so much of the prior act as required the written evidence of waiver. There is no express repeal of the prior provision, nor anything in the second act that is repugnant to it. Unless therefore it is clear that the legislature intended to revise the whole subject of the landlord's lien for supplies furnished his employees, and to embody all the rules to be found on that subject in the latter act, it cannot be held to repeal the provision referred to. *Coats* v. *Hill,* 41 Ark., 149; *Blackwell* v. *State,* 45 *id.,* 90 ; *Zerger* v. *Quilling,* 48 *id.,* 157.

But the act of 1885 does not profess to be an act to revise the law upon the subject of the landlord's lien for supplies furnished his employee, and carries its own evidence of the intent not to furnish the only rules to be found on that subject.

Its principal object was to provide for a lien for the landlord upon the crop of his *tenant* for supplies furnished, which prior to that time did not exist. It provides also for the enforcement of the lien and the punishment of the tenant for a fraudulent sale of the property upon which the lien exists, the same provisions being made to apply to the landlord's lien upon the employee's interest in the crop. The act concludes with a clause repealing all acts inconsistent with

3. Repeal of statute by implication.

its provisions. By the latter provision the statute prescribes its own operation upon the previous àct; and, in the absence of a clear intention otherwise manifested, no other operation can be given to the latter act, because that is then the express limitation the legislature has seen fit to place upon it. *Henderson's Tobacco*, 11 Wall., 652 ; *Patterson v. Tatum*, 3 Saw., 164; *Lewis* v. *Stout*, 22 Wis., 234; *Gaston* v. *Merriam*, 33 Minn., 271.

There is therefore no repeal of any previous provision of the law in reference to the landlord's lien for supplies furnished his employee, except such as is repugnant to some provision of the second act. As before stated, there is no such repugnancy as to the provision under consideration. There is no provision in the statute requiring a waiver in writing of the landlord's lien for rent or for supplies furnished his *tenant ;* but the distinction is a matter of policy which is left to the legislature for determination, and it is not a consideration to control the construction of the statute.

If the second statute were held to repeal the first, an equally glaring inconsistency would remain in this, viz.: An employee would be subject to punishment under the second act for selling the crop to defeat the landlord's lien, while the landlord would be relieved of the punishment prescribed by the first act for a like conduct toward his employee. The second act does not provide for the punishment of the landlord, because it was devised chiefly to cover the defect as to the lien on the crop of the *tenant ;* and as neither the title nor possession of the crop is in the landlord, he has no power to sell and defeat the tenant's rights.

Motion denied.