## HARDEMAN *v*. ARTHURS.

### Opinion delivered May 31, 1920.

1. LANDLORD AND TENANT—SHARE-CROPPER NOT A TENANT.—A contract whereby a land owner was to furnish the tools, teams, seed, and land and to direct the mode of cultivation and harvesting, without giving to the other party exclusive dominion of the land or of the crops to be planted thereon, creates the relation of employer and employee, and not of landlord and tenant.

2. LANDLORD AND SHARE-CROPPER—TITLE TO CROP.—Under a contract between a land owner and share-cropper, the title to the crop is in the land owner, and one who purchases the crop from the share-cropper is liable to the land owner therefor as for conversion.

Appeal from Woodruff Circuit Court, Southern District; *J. M. Jackson,* Judge; reversed.

*Jonas F. Dyson,* for appellant.

The court erred in directing a verdict for appellee. There was a case made for a jury under proper instructions, and the judgment should be reversed for a new trial before a jury under proper instructions.

*Roy D. Campbell,* for appellee.

1. The appeal should be dismissed for failure to comply with rule 9 by appellant, as he has not made a proper abstract.

2. Wilsons made a tender of the amount due appellant, which was refused. No proper exceptions were saved to the instructions. The contract here established the relation of landlord and tenant, and appellee Arthurs could not be sued by appellant in a court of law for converting his property. 48 Ark. 265 is not in point. 46 *Id.* 254. The remedy was in equity. 36 Ark. 575; 44 *Id.* 108; 48 *Id.* 355; 72 *Id.* 132. See, also, 132 Ark. 594. Appellant has mistaken his remedy.

WOOD, J. L. P. Hardeman, as party of the first part, entered into a contract with William and Grover Wilson, the parties of the second part, whereby the party of the first part was to furnish the tools, teams, seed, and the land as his part and the parties of the second part were to furnish all the labor necessary to cultivate the 40 acres of land "according to the rules of share cropping." If the parties of the second part failed to perform the necessary labor according to the instructions of the first party or his foreman, the first party could have the same done at the current wages of the country, after giving the second party notice, and charge the amount to the second party to be paid out of their half of the crop.

Such were the essential provisions of the contract under which the Wilsons cultivated the land of Hardeman for the year 1917. In December, 1917, the Wilsons

sold to W. A. Arthurs a bale of cotton, produced by them on the farm of Hardeman under the above contract.

Hardeman, hereafter for convenience called appellant, brought this action against Arthurs, hereafter called appellee, to recover the sum of $129, which appellant alleged was the value of the bale of cotton belonging to appellant that appellee had purchased of the Wilsons.

The appellant alleged that appellee knew at the time he purchased the bale of cotton from the Wilsons that the same was raised by the Wilsons on appellant's land under a share-cropper's contract.

The appellee answered denying the allegations of the appellant's complaint and alleged that any cotton purchased by him from the Wilsons was purchased in good faith without any knowledge of any interest or title of the appellant in the cotton. He alleged that the Wilsons were necessary parties and moved that they be made parties defendant, which was done.

The Wilsons answered admitting that they made a crop on the land of appellant in the year 1917; that appellant had furnished them certain supplies for that year, but alleged that they had performed work for the appellant and that upon an accounting with appellant, including the bale of cotton sold by them to the appellee, they would be due the appellant the sum of $32.50, which they tendered in open court. They further alleged that appellee purchased the bale of cotton from them in good faith without any knowledge or notice of appellant's claim on the cotton.

Appellant replied to the answer of the Wilsons and set up that they were indebted to him in the sum of $87.70, for which he asked judgment.

The appellant testified that the Wilsons worked a share crop with him.

The testimony of the Wilsons in substance was to the effect that they made the contract to make a crop on appellant's place in the year of 1917; that appellant was to furnish everything and get one-half. They made five bales of cotton and divided it all with appellant ex-

cept the last bale, which was sold by them to the appellee for $116.44.

Appellee testified that he bought the bale of cotton from the Wilsons; that he had no notice that appellant had any interest in the cotton. He had bought two bales from them previously. Appellee knew that the cotton came from the appellant's place, but did not know anything about the contract of appellant and the Wilsons.

On cross-examination, the appellee was asked: "Q. At the time they sold the cotton to you, didn't they go into the facts of the case and tell you that they had been dividing this cotton with Hardeman, out there?" A. "Well, I don't know; I don't remember if they did."

Appellant testified that the Wilsons raised five bales of cotton including the bale in controversy under the share crop contract, which he made an exhibit to his complaint. The court instructed the jury to return a verdict in favor of the appellee, to which ruling the appellant excepted.

The appellant prayed for the following instruction: "You are instructed that the title to the crop raised by one working on the shares is in the landlord, and one who purchases same or any part thereof is responsible to the landlord for the conversion thereof."

The court refused this prayer, to which ruling the appellant duly excepted.

A judgment was entered dismissing the appellant's complaint as to the appellee, Arthurs, from which is this appeal.

The court erred in instructing the jury to return a verdict in favor of the appellee. The contract, as we construe it, clearly creates the relation of employer and employee, rather than that of landlord and tenant. There is no language in the contract indicating that the share of the crop which appellant was to receive was for the use or rent of the land or that the possession of the land was surrendered by the appellant to the Wilsons for the year 1917. There is nothing to show that the Wilsons had either exclusive dominion of the land during that period or of the crops to be planted thereon, giving them

the right to pursue their own methods in the cultivation thereof and the right to gather and hold the same as their own, until the division was made between them and the appellant. On the contrary, the language of the contract shows that appellant had the right to direct the Wilsons as to how they should perform the labor necessary for the cultivation and harvesting of the crop. In *Tinsley* v. *Craige,* 54 Ark. 346-9, we said:

"Ordinarily when the parties occupy the relation of landlord and tenant, the title to the crop is in the tenant, and he pays the landlord rent in kind or otherwise; and in general where they occupy the relation of landlord and cropper on shares, the title to the crop is in the landlord, and he delivers a part of it to the cropper in payment of his services."

The relation is determined by the terms of the contract which in this case plainly shows that the relation, as before stated, is that of employer and employee, rather than landlord and tenant. See also *Hammock* v. *Creekmore,* 48 Ark. 264; *Neal* v. *Brandon,* 70 Ark. 79-82; *St. L., I. M. & S. Ry. Co.* v. *Hardie,* 87 Ark. 475-83; *Valentine* v. *Edwards,* 112 Ark. 35-46.

For the error indicated the judgment is reversed with directions to grant appellant a new trial as to appellee Arthurs.

