FENTON v. PRICE.

Opinion delivered July 12, 1920.

1. LANDLORD AND TENANT—DUTY TO DELIVER SHARE TO CROPPER.— Where defendant agreed with a share-cropper that the latter should receive one-half of the crop, the title to the crop was in the defendant, but it was defendant's duty to deliver to the cropper his share of the crop when gathered.

2. LANDLORD AND TENANT—QUESTION FOR JURY.—Where there was a conflict in the testimony as to whether defendant's conduct or that of another prevented plaintiff from effecting a sale of his cotton crop before the price fell, it was error to direct a verdict for the defendant.

3. DAMAGES—DIRECT AND PROXIMATE.—A party violating a contract is liable for all direct and proximate damages resulting from such violation; such damages must be certain both in their nature and in respect to the cause from which they proceed, and must not involve inquiries that are collateral.

Appeal from Little River Circuit Court; *James S. Steel,* Judge; reversed.

W. S. Price sued W. O. Fenton to recover damages in the sum of $282.05 which he alleged he sustained by reason of the former refusing to allow him to sell his one-half interest in six bales of cotton raised by him as a share-cropper under Fenton. W. O. Fenton rented a part of the plantation of the Red River Plantation & Realty Company for the year 1918, and agreed to pay as rent therefor one-third of the corn and one-fourth of the cotton which he raised on the land.

Hiram Bradley was the representative of the Red River Plantation & Realty Company and managed its business for it. W. S. Price was a share-cropper on the place under W. O. Fenton. Fenton agreed with Price to furnish the land, teams and tools, and Price was to work and gather the crop and get one-half of it. On October 22, 1918, Price had gathered six bales of his cotton and was entitled to one-half of it. The cotton at that time was worth thirty-two cents a pound. Price was offered that price for it, but the cotton buyers refused to buy it after Hiram Bradley had notified them that his company had a landlord's lien on the cotton for rent and supplies. Fenton was willing for Price to sell the cotton, but was not willing for Price to put one-fourth of the proceeds in the bank to Mr. Bradley's credit. Fenton was willing for Price to sell the cotton provided he would put one-fourth of the money in the bank to Fenton's credit, or would place it in the bank in such a way that Bradley could not get it until Fenton was willing for him to do so. There was dispute at the time between Fenton and Bradley about the rent. Bradley had a claim for damages against Fenton, and Fenton had a claim for damages against the Plantation & Realty Company.

Hiram Bradley corroborated the testimony of Price to the effect that Fenton refused to let Price sell the cot-

ton grown by him unless he would place one-fourth of the money received for it in the bank to the credit of Fenton, or place it so that Bradley could not get hold of it until the dispute between his company and Fenton was settled.

It was also shown that on the 22d day of October, 1918, cotton was worth thirty-two cents a pound, and that the cotton buyers in that vicinity would have paid Price that sum for the cotton if the Plantation & Realty Company had not notified them that it had a lien on the cotton.

Subsequently Price gathered six more bales of cotton, and was unable to sell it for the same reason. He was offered thirty cents per pound for it if Bradley would agree for him to sell it. In January, 1919, Bradley and Fenton entered into an agreement allowing Price to sell his part of the crop, but at that time the market had fallen, and Price was thereby damaged in the sum sued for.

On the other hand, Fenton testified that he was at all times willing for Price to sell the cotton and divide the proceeds. He denied that he required Price to place one-fourth of the proceeds in the bank to his credit, or in such way that Bradley could not get hold of it as a condition to allowing Price to sell the cotton. He admitted that he did have a claim for damages against the Plantation & Realty Company, and that the latter was also asserting a claim for damages against him for a breach of the rent contract. He stated further that he had been advised that neither he nor the landowner had any lien on the crop for a claim for damages, and that he tried to get Bradley to agree to let Price sell the cotton without placing any restrictions upon him in this respect.

The court directed a verdict for Price against Fenton in the amount sued for, and Fenton has appealed.

*June R. Morrell,* for appellant.

The court erred in directing a verdict for appellee and in refusing the instructions requested for appellant. Appellant was entitled under the evidence to a directed verdict or at least to a submission of the cause to a jury.

15 R. C. L., § 23, p. 63; 73 Ark. 561; 84 S. W. 700; 67 L. R. A. (N. S.) 231; 108 Am. St. 71.

*Reynolds & Steele*, for appellee.

Under the undisputed evidence and the pleadings, appellee was a share-cropper with appellant, and Fenton furnished the land, team and tools and feed, and Price the labor to make and gather the crop. The title to the crop was in Fenton (appellant), and he was entitled to the possession until it was divided or sold. Price's demand was wholly in keeping with our law. 32 Ark. 435; 48 *Id.* 264; 54 *Id.* 346; 87 *Id.* 483; 112 *Id.* 354; 12 Cyc. 980 (C); 24 Cyc. 1469 (C). The proof is conclusive that Fenton did not deliver the cotton to Price or offer it to him in a condition that Price could sell it. Price was responsible to the plantation company for the rent. Kirby's Dig., §§ 5035-8; 103 Ark. 91; 109 *Id.* 552. See, also, 61 Ark. 312. Where both plaintiff and defendant ask a peremptory instruction, it is the duty of the court to instruct for plaintiff or defendant. The lower court believed appellee was entitled to judgment, and the court's decision is final. The pleadings, evidence and the law are unquestionably on the side of appellee, and the judgment should be affirmed.

HART, J. (after stating the facts). Fenton rented land from the corporation of which Hiram Bradley was the manager and agreed to pay, as rent therefor for the year 1918, one-third of the corn and one-fourth of all the cotton raised by him. Price was a cropper on the shares under Fenton. He raised twelve bales of cotton, and under his contract with Fenton he was to receive one-half of the cotton raised by him in payment of his services. Under their agreement the title to the cotton raised by Price was in Fenton, and it was the latter's duty to deliver to the former one-half of the cotton when it was gathered. *Tinsley* v. *Craige*, 54 Ark. 346, and *Valentine* v. *Edwards*, 112 Ark. 354.

After Price had gathered the cotton in the fall, Fenton gave him permission to sell it for the purpose of di-

viding the proceeds, but Price was unable to do so because Bradley had notified the cotton buyers in that territory that his company was claiming a landlord's lien on the cotton. Fenton and Bradley had a dispute about the amount of rent due, each asserting a claim for damages against the other for a breach of the rent contract. Price's theory is that Fenton prevented him from selling the cotton raised by him after it had been gathered, by demanding that one-fourth of the proceeds should be deposited in the bank to his credit or deposited in such a way that Bradley could not get it until after the dispute between his company and Fenton had been settled.

On the other hand, Fenton claimed that he placed no restrictions whatever upon Price selling the cotton, and said that he was at all times willing for Price to sell it. He testified, in substance, that he did not demand, as a condition to allowing Price to sell the cotton, that the latter should place one-fourth of the proceeds so that Bradley could not get hold of it until he and Fenton had settled. This testimony of Fenton made a case for the jury, and it was error calling for a reversal of the judgment for the court to have directed a verdict in favor of Price against Fenton.

A party violating a contract is liable for all the direct and proximate damages which result from the violation. The damages must flow directly and naturally from the breach of the contract, and they must be certain, both in their nature and in respect to the cause from which they proceed. They must not be remote, involving inquiries that are collateral to the consideration of the wrongful act which constituted a breach of the contract. *McDaniel* v. *Crabtree*, 21 Ark. 431; *Gerson* v. *Slemons*, 30 Ark. 50, and *Western Union Tel. Co.* v. *Short*, 53 Ark. 434.

If the testimony of Fenton is true, the direct and proximate cause of the loss to Price was the act of the agent of the owner of the land in notifying the cotton buyers in that territory not to buy the cotton raised by Price because the landowner was claiming a landlord's

lien on the cotton. While it was the duty of Fenton to divide the crop after it was gathered and give Price one-half of the cotton raised or the proceeds thereof, still he could not be compelled, in order to effectuate a division of the crop, to release his claim for damages against his landlord. In short, if Fenton's testimony is to be believed, the proximate cause of the damages suffered by Price was the action of Bradley in notifying the cotton buyers not to buy the cotton raised by Price and it was not the action of Fenton in making a claim for damages against his landlord. His action in this respect could be only considered as the remote cause of the damages that resulted to Price.

On the other hand, if Fenton, as testified to by Price, demanded that the latter should place one-fourth of the proceeds of the cotton in a bank to his credit, or in such a way that Bradley could not get it until their dispute about the breach of the rent contract was settled, as a condition to the right of Price to sell the cotton and divide the proceeds, then the action of Fenton was the direct and proximate cause of the damages that resulted to Price, and he would be liable therefor.

Because the court erred in not submitting this disputed question of fact to the jury, the judgment must be reversed and the cause will be remanded for a new trial.