## PAPAN *v.* THOMASON.

### Opinion delivered December 11, 1922.

1. LANDLORD AND TENANT—CONVERSION OF CROP.—Evidence that a landlord in possession of a crop refused to divide it in kind or to sell and divide the proceeds, as provided in the contract under which the crop was grown, *held* to establish a conversion.

2. LANDLORD AND TENANT—DATE OF CONVERSION OF CROP.—A tenant entitled to one-half of a crop, who has made several demands either for a division or sale, as provided by contract, has a right to treat the date of the last demand and refusal as the date of conversion and to sue for value on that date.

3. LANDLORD AND TENANT—CONVERSION—TENDER OF ADVANCES.—A tenant suing the landlord for conversion of his half of the crop is not required as a condition of suing to tender the amount of advances made by the landlord where the contract was that the advances were to be paid out of the proceeds of the crop, and the plaintiff offered to make payment in that manner.

4. LANDLORD AND TENANT—CONVERSION OF CROP—WAIVER.—Where, after an action for conversion was brought by a tenant against his landlord for refusal to deliver half of a rice crop to which plaintiff was entitled, defendant allowed plaintiff to sell the crop, which he did for a lower price than was obtainable at the time of the conversion, *held* that such acceptance and sale of the crop by plaintiff was not a waiver of the conversion, unless it was was tendered and accepted as such, and that the delivery of the crop operated only to reduce the damages.

Appeal from Arkansas Chancery Court, Northern District; *John M. Elliott,* Chancellor; affirmed.

*George C. Lewis,* for appellant.

The proof fails to show conversion. Cooley on Torts (3rd ed.) vol. 2 p. 859; 119 Ark. 343; 34 Ark. 427; 26 R. C. L. 1131; 10 Ark. 211; Bowers on Conversion, secs. 2 and 570; 38 Tenn. 51; 35 Tenn. 275; 78 Wis. 329.

The amount of the lien must be tendered before the cause of action accrues. 38 Cyc. 2058; 79 Ark. 95.

*J. F. Holtzendorf* and *Chas. B. Thweatt,* for appellees.

The lease should be construed most strongly against the grantor or the person who prepared it. 24 Cyc. 215; 112 Ark. 1; 115 Ark. 166; 235 S. W. 1001. It was implied that tenant was to receive his share within a reasonable time... 24 Cyc. 1472; 145 Ark. 119. If appellee was an employee, then appellant should have delivered one-half the crop as wages. 112 Ark. 354; 87 Ark. 475; 54 Ark. 346; 48 Ark. 264. There was a conversion here. 38 Cyc. 2029; 7 R. C. L. 824; 31 L. R. A. 698. The conversion was not waived. 29 Ark. 365; 83 Ark. 10; 89 Ark. 342; 38 Cyc. 2102-3; 148 Ark. 117; 26 R. C. L. 1113 and 1155. The appellee was entitled to the highest market value. 38 Cyc. 2096; 26 R. C. L. 1151.

SMITH, J. Papan and Thomason, the parties to this litigation, made a contract in writing for growing a crop of rice in the season of 1919. Papan owned the land, and was to furnish the fuel, etc., and was designated as the party of the first part. Thomason was to do the work, and was designated as the party of the second part.

The contract provided that "said second party agrees to seed one hundred eighty acres with rice, and furnish all necessary labor to raise, harvest, and deliver said crop to nearest railroad station or rice mill, and take care of it until settlement is made, for one-half of the crop. Said second party further agrees to do and perform everything necessary to produce said crop, free of expense to first party, except those things especially mentioned herein that said party agrees to do."

Papan specifically reserved the granary, where the rice was to be stored, and where it was stored after it had been harvested. Papan advanced money during the year to the extent of $1,277.54 to enable Thomason to

make the crop, and it was agreed between them that these advances should be repaid when the crop was sold.

There were two kinds of rice grown; one kind being known as Blue Rose, of which there were four cars, and a division in kind was made of it, each party receiving two cars; the other kind of rice was called Early Prolific, and there were 3,849 bushels of it, all of which were stored in the granary, the possession of which Papan had reserved in the contract.

The suit was brought by Thomason on the theory that Papan had converted the crop to his own use, and the court below found the fact so to be, and stated the account between the parties on that theory, and the correctness of that finding is the question in the case.

The testimony of the parties is sharply conflicting, and each has substantial corroboration; but the court found the fact to be that Papan had converted Thomason's interest in the crop, and on that finding charged Papan with its value. The basis of this finding was that Papan had refused to divide the rice in kind, and had also refused to sell the rice and divide the proceeds of the sale.

The contract is somewhat ambiguous, and leaves in doubt the question whether it creates the relationship of landlord and tenant or that of employer and employee; but the parties agree that this is immaterial, and that the controlling question is one of fact, that question being whether Papan converted the rice.

According to Thomason and the testimony in his behalf, he made a demand for a division of the rice or for a sale of it and a division of its proceeds on six different occasions, the last of such demands having been made on January 9, 1920, and the court fixed the value of the rice as of that day.

There appears to have been no valid reason why the division should not have been made. According to Thomason, the reason assigned by Papan for refusing to make the division was that the price would go up, and Papan did not want to sell, and he warned Thomason

and his employees not to move the rice. The court below evidently credited this testimony, and we cannot say that the finding based thereon is clearly against the preponderance of the evidence, although, as we have said, it was all disputed by Papan and certain witnesses who testified in his behalf. The refusal to divide either the rice or the proceeds thereof, as demanded by Thomason, constituted a conversion and warranted a suit for so doing. *Pickering* v. *Moore,* 31 L. R. A. 698; 7 R. C. L. p. 824; *Fenton* v. *Price,* 145 Ark. 116; *Hooten* v. *State,* 119 Ark. 343; *Ray* v. *Light,* 34 Ark. 421.

The testimony shows that the price of the rice had advanced sharply from the time of the first demand for a division until January 9, 1920, at which time its market value was $3.25 per bushel. The market advanced slightly after that, and then commenced to decline and continued to do so, until the rice, for which a price of $6,254 could at one time have been obtained, was finally sold for $1,490.

Papan insists that, if his refusal to divide the rice be treated as a conversion of it, he should be charged with its value at the time when Thomason says he first refused, and that at that time the rice was worth much less than $3.25 per bushel.

If the conversion occurred prior to January 9, 1920, then Thomason would have had the right to fix the value of the rice as of the date of the original conversion; but he also had the right to renew his demand for a division at a later date, and this he did at a time when the rice was still in Papan's possession and subject to division, and Papan should then have divided the rice, although he had previously refused to do so. Thomason had the right, at his election, to fix the date of this last refusal as the date of the conversion, for the purpose of computing its value. See sec. 66 of article on Trover in 26 R. C. L., p. 1151, and cases cited in the notes to the text.

It is argued that Thomason was not entitled to maintain this suit, for the reason that he did not tender Papan the amount due for advances made. In answer to this ar-

gument, attention is called to testimony of Papan him-
self that the advances made by him were to be paid for
out of the proceeds of the crop at the time it was sold; and
Thomason testified that he asked Papan how he (Papan)
expected him to pay the advances unless the rice was
sold, and he told Papan that if it was sold the purchaser
might send him (Papan) a check for the advances, and
Papan answered that he had a way of getting his money,
and again refused to sell the crop or to divide it. It ap-
pears therefore that Thomason made a tender of payment
in the manner contemplated by the contract when he
proposed that the advances be deducted from the pro-
ceeds of the sale.

It is finally insisted that, if there was a conversion,
there was also a waiver of that act. The basis of this
contention is that Papan permitted Thomason to ship
the rice to a mill, where it was toll-milled and $700 of the
proceeds of the sale then made was paid to Papan, and
the remaining $790 was held by the mill until this suit
was filed, when that sum was deposited with the clerk
of the court, subject to its orders.

This action, to which Papan finally consented, ap-
pears to have been what the contract provided should
have been done in the first instance, the provisions of the
contract being that the second party (Thomason) should
"deliver said crop to nearest railroad station or rice
mill, and take care of it until settlement is made, for one-
half of the crop."

It is not contended that this was not the best dis-
position that could then have been made of the rice, or
that a better price could have been then obtained for it.

The conversion of the rice was therefore not waived,
and Papan was only entitled to be credited with its value
at the time of its sale, for the law is that when property
has been wrongfully converted, the acceptance of a return
thereof by the owner does not waive the conversion, un-
less it is tendered in satisfaction thereof, and, unless so
accepted, the return thereof will only reduce the damages
for the wrongful conversion to the extent of the value

of the property when returned, and does not defeat an action for the conversion thereof. *Norman* v. *Rogers,* 29 Ark. 365; *Plummer* v. *Reeves,* 83 Ark. 10; *Midland Valley R. Co.* v. *Fay & Eagan,* 89 Ark. 342; *Fenton* v. *Price, supra; Sloan* v. *Butler,* 148 Ark. 117.

The decree of the court below accords with the views here expressed, and is therefore affirmed.