BARNHARDT *v.* STATE.

Opinion delivered Octo'ber 19, 1925.

1. CRIMINAL LAW—CORROBORATION OF ACCOMPLICE—INSTRUCTION.— An instruction to the jury that the corroboration of an accomplice "is sufficient if there is any evidence to warrant you in convicting the defendant, which, taken with all the other evidence in the case, convinces you of the guilt of the defendant beyond a reasonable doubt" was deficient in not telling the jury that the corroboration was not sufficient if it merely showed that the offense was committed and the circumstances thereof.

2. CRIMINAL LAW—CONFLICTING THEORIES—INSTRUCTIONS.—Where the evidence in a prosecution for aiding in the embezzlement of a crop of cotton justified su'bmission of the State's theory that the title to the cotton was in the landowner under a share-cropper's agreement, and the defendant's theory that the person aided was owner of the crop as tenant of the landowner, it was error to charge the jury as to the former theory and to refuse to charge as to the latter.

3. LANDLORD AND TENANT—TITLE TO CROP.—Where a share-cropper raises a crop for the landlord, and is to receive a part of the crop as wages, the title to the crop vests in the landlord; but where the share-cropper pays one-half of the crop for the use of the land, with the tools, team and feed therefor, the title to the crop is in the tenant.

4. CRIMINAL LAW—ADMISSIONS OF DEFENDANT.—In a prosecution for aiding another in em'bezzling a crop of cotton, any incriminating admission made by defendant on a previous trial for buying the same cotton at night, in violation of Crawford & Moses' Dig., § 2439, was competent.

3. CRIMINAL LAW—OTHER OFFENSES AS EVIDENCE OF INTENT.—In a prosecution for aiding another to embezzle cotton, where defendant admitted that he bought the cotton from the alleged share-cropper in the night time but claimed that he supposed that the share-cropper had the right to sell it, testimony that the defendant had bought cotton from other tenants under similar circumstances was admissi'ble as tending to show intent or guilty knowledge.

Appeal from Lee Circuit Court; *E. D. Robertson,* Judge; reversed.

*R. D. Smith* and *Mann & McCulloch,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

SMITH, J. Appellant Barnhardt was convicted under an indictment charging him with having aided and abetted one O. C. Osborne in embezzling 250 pounds of seed cotton belonging to Alfred Sohm.

Osborne admitted his guilt and implicated Barnhardt. The court gave an instruction on the question of the sufficiency of the corroboration of an accomplice to sustain a conviction, and in the instruction the jury was told that the corroboration "is sufficient if there is any evidence to warrant you in convicting the defendant which, taken with all the other evidence in the case, convinces you of the guilt of the defendant beyond a reasonable doubt." This instruction was deficient in not telling the jury that the corroboration was not sufficient if it merely showed that the offense was committed and the circumstances thereof (§ 3181 C. & M. Digest), but the objection offered to the instruction was possibly not sufficient to call to the attention of the court the requirement of the statute in the particular indicated. Appellant asked and the court gave an instruction embodying the requirement of the statute that a conviction could not be had on the testimony of an accomplice if the corroboration showed only that the offense was committed and the circumstances thereof.

Over appellant's objection the court gave an instruction numbered 1 reading as follows: "You are instructed that if you find from the testimony in this case beyond a reasonable doubt that O. C. Osborne made a contract with Alfred Sohm by the terms of which he was to be furnished by the said Alfred Sohm with the land, farming implements, seed, etc., to make a crop, and that he, the said Osborne, was to receive for his labor one-half of the proceeds of such crop, and that the said O. C. Osborne raised the cotton mentioned and described in the indictment in this case, pursuant to said contract, then the title to such cotton was in the said Alfred Sohm, and it was his property."

This instruction is a correct declaration of the law, and was properly given. But, having given this instruc-

tion, the court should also have given the converse thereof embodied in an instruction numbered 7 requested by appellant reading as follows: "You are instructed that, if you find from the evidence that Sohm and Osborne entered into an agreement whereby Sohm rented to Osborne the land on which the cotton alleged to have been embezzled was grown, and that the said Osborne agreed to pay to the said Sohm one-half of all cotton raised on said land as rent therefor, then your verdict will be not guilty, notwithstanding the fact that you find that the said Osborne failed to perform his part of the agreement."

These instructions, had both been given, would have submitted to the jury the question whether Osborne was a tenant or whether he was a mere laborer.

The indictment alleged that the property stolen belonged to Alfred Sohm. This allegation of ownership was material, and the two instructions, together, would have submitted that question of fact to the jury, whereas the instruction given submitted only the State's theory of the case. We think the testimony raised a question of fact as to the ownership of the property which should have gone to the jury.

J. J. Hughes testified that he was agent or manager of Alfred Sohm, and he was asked this question: "Q. You have stated that Mr. Osborne was there in what capacity?", and to this question he answered: "As a tenant or employee." Hughes further testified that he as agent for the owner of the land was to furnish the livestock, plow tools, gear and half of the fertilizer, and that Osborne was to do the necessary work to make the crop. He was asked how the crop was to be divided, and he answered: "A. After his (Osborne's) account was paid, he was to receive his part of the crop or one-half of the crop." In this same connection Osborne was asked: "Q. He furnished the mules and the feed for the mules and the seed and the plow tools, and you did the work on the land, and you gave him half for the use of

those things?", and the witness answered: "A. Yes, sir, I was making a share-crop."

We think this testimony leaves in doubt, or at least that a question was made for the jury, as to whether Osborne was a tenant or an employee. Hughes testified that he was a "tenant or employee." If Osborne was a tenant, then the title to the crop was in him, and Sohm, the landlord, had a lien thereon for one-half the crop as rent, and a lien on the remaining half for the value of any necessary advances of money or supplies to enable Osborne to make the crop. On the other hand, if Osborne was a mere employee, then the title to the crop was in Sohm, as it was alleged to be in the indictment.

The distinction may appear to be finely drawn between a tenant who pays half the crop for the use of the land and live-stock and feed therefor, with the necessary tools and implements to grow the crop, and one who makes a crop as an employee to whom these things are furnished and who is given for his labor one-half of the crop to be grown by him.

But this distinction has been recognized by this court in many cases. It had been recognized prior to the case of *Hammock* v. *Creekmore,* 48 Ark. 264, as is shown by the cases to which Chief Justice COCKRILL referred in the opinion in that case. The earlier cases were there reviewed, and the law in regard to the title to crops grown "on shares" was there restated to be as follows:

If the share-cropper raises a crop for the landlord, and is to receive a part of the crop from the landlord as wages for his work, the title to the crop grown vests in the landlord, and the share-cropper has a lien thereon for his labor. If the share-cropper is to pay one-half the crop for the use of the land, with the tools and team and feed therefor, then the title to the crop is in the tenant, and the landlord has a lien thereon, and, in addition, the landlord has a lien for any necessary supplies of money or provisions to enable the tenant to make the crop, but the title to the crop is in the tenant.

As was said by the learned Chief Justice in the *Hammock* v. *Creekmore* case, "if the intention to become tenants in common had been indicated (see *Bertrand* v. *Taylor,* 32 Ark. 470; *Ponder* v. *Rhea, ib.* 436), then the title would have vested, as in other chattels held in common (*Hamby* v. *Wall, ante* 135) * * *."

The distinction pointed out in the case of *Hammock* v. *Creekmore, supra,* has been consistently recognized by this court in later cases. *Rand* v. *Walton,* 130 Ark. 431; *Woodson* v. *McLaughlin,* 150 Ark. 340; *Bourland* v. *McKnight,* 79 Ark. 427.

We conclude, therefore, that instruction numbered 7 requested by appellant should have been given, so that the jury would have been advised what the distinction was between a share-cropper who makes a crop for the landlord under an agreement to pay as rent a given portion of the crop, and one who makes a crop for the landlord under a contract to be paid as wages for his labor an agreed share thereof, this distinction being determinative of the question of title to the cotton.

A motion for a continuance was filed, and it is earnestly insisted that error was committed in overruling it. In view of the fact that we are reversing the case on another ground, it will be unnecessary to consider this assignment of error.

It is further insisted that the court erred in permitting the witness Hughes to testify that the defendant had entered a plea of guilty to the charge of stealing the cotton at the preliminary hearing before the justice of the peace. It appears that appellant and Osborne were arrested the very night the cotton was sold by Osborne to Barnhardt. This sale was made in the nighttime. On the following day both Osborne and Barnhardt were arraigned before a justice of the peace, and Barnhardt pleaded guilty to the offense of buying cotton after night in violation of § 2439, C. & M. Digest, and he was fined for that offense. At the trial from which this appeal comes he testified that his plea of guilty was limited to the admission that the cotton had been pur-

chased after dark, and that he did not intend to enter a plea of guilty to any other charge.

This was a question of fact, and any admission made by Barnhardt in this connection was admissible against him. He had the right to testify as to the plea entered by him, and likewise to explain such plea, but any statements made by him in making this plea were admissible against him, and it was competent and admissible for Hughes, or any other witness who heard Barnhardt's statements, to testify as to the statements then made.

Error is also assigned in the action of the court in permitting testimony to be offered tending to show that Barnhardt bought cotton from other tenants under circumstances similar to those under which he purchased cotton from Osborne. Barnhardt admitted purchasing the cotton in question, but testified that he supposed Osborne had the right to sell it. The testimony objected to was therefore admissible as tending to show the intent or guilty knowledge of Barnhardt at the time of these sales, all of them being made in the nighttime and under circumstances indicating that there was a desire to conceal what was being done.

Certain other errors are assigned which we do not think require discussion, but for the error indicated the judgment must be reversed, and the cause will be remanded.