## Quarles v. Little Cypress Drainage District. · ·

### Opinion delivered March 30, 1925.

1. · Drains—contract for construction.—Where the engineer of a drainage district severed his connection as engineer for the district, openly and with the district's consent, after all the preliminary work had been completed, and thereafter made the lowest bid for the construction work, *held* that he violated no principle of law in doing so, and his contract of construction was valid.

2. Drains—rights of subcontractor.—A subcontractor who has partly constructed a ditch, and the work being stopped by the district, is entitled to recover *ex contractu*, and not on a *quantum meruit*, for the work done pursuant to the contract of the principal contractor with the district.

3. Drains—rights of subcontractor.—Where a contractor sued a drainage district for the amount due him for work done under his contract and for breach of his contract, and his subcontractor brought a similar suit against the contractor and the district, and the cases were tried together, in order to avoid a circuity of actions the subcontractor will be allowed to recover direct from the district the portion of the amount due the contractor which belonged to the subcontractor.

4. Drains—right to stop work.—Where a drainage district in a construction contract reserved the right to stop work and complete it itself, and a subcontract provided for the same contingency, the district is not liable to the subcontractor for stopping the work.

5. Drains—stoppage of work—right to deduct advance payment.—Where a construction contract with a drainage district provided for advance payment by the district for purchase of the equipment, and for repayment by deduction of part of the agreed price per yard, the district upon stopping the work under an option in the contract was not entitled to deduct the unpaid remainder of the advance payment as against a subcontractor.

6. Drains—stoppage of work—right to deduct advance payment.—Where a construction contract with a drainage district provided for advance payment by the district for purchase of the equipment, and for repayment by deduction of part of the agreed price per yard and further provided that this district should have the option to stop the work and complete it on the cost basis, and to employ the contractor at a fixed per centum of the cost, the district is entitled, in settling with the contractor, to charge him with the cost of the advance payment for the equipment.

7. DRAINS—RIGHTS OF CONTRACTOR.—Where a principal contractor agreed to construct a drainage ditch at the rate of 35 cents per cubic yard, which was in turn subcontracted to another at 25 cents per cubic yard, he was entitled to recover the difference between the two amounts where the district exercised its option to stop work before completion.

8. DRAINS—BREACH OF CONTRACT—DAMAGE.—Where a drainage district, having the right to stop the work under a contract and to employ the contractor on a cost-plus basis, exercised its option to stop the work, but failed to complete it under the cost-plus basis, it will be liable to the contractor for the work done under the contract and for damages caused by failure to complete the ditch under the cost-plus basis.

Appeal from Phillips Chancery Court; *A. L. Hutchins,* Chancellor; reversed.

*L. C. Going, Coleman, Robinson & House* and *W. G. Dinning,* for appellants.

*Moore, Walker & Moore,* for appellees.

McCULLOCH, C. J.   Appellee is a drainage district in Phillips County, organized under a special statute, and appellant, John M. Quarles, together with his partner in the practice of the engineering profession, Mr. Hurlbutt, were employed by the commissioners to do the engineering work for the district.   The engineers made the necessary surveys upon plans and specifications which were adopted by the commissioners, and an advertisement for bids was duly published.   The commissioners received one or more bids; but they were unsatisfactory and were rejected.   At this point of the proceedings appellant Quarles applied to the commissioners for permission to resign his position as engineer and make a bid to do the construction work.   After consultation with the attorney for the district, who advised that there was no impropriety in Quarles resigning his position and bidding for the work, the commissioners permitted him to do so, and his bid was accepted and a contract was entered into with him by the commissioners.   The bid was to remove the estimated amount

of 364,273 cubic yards of earth at thirty-five cents per cubic yard. There was also a specification of the price and quantity of clearing and grubbing, but there is no controversy in the present litigation over that feature of the work, hence it is unnecessary to mention it.

The contract between Quarles and the commissioners was dated October 12, 1920, and contained a stipulation to the effect that the district should advance to the contractor the sum of $25,000 in money, one-half of which was to be paid over when the dredging machinery should arrive at a certain railroad station near the work, and the other one-half when the machinery was installed and ready for operation at the place where the system of canals was to begin, and it was further stipulated that the amount so advanced should be repaid by a deduction of ten cents per cubic yard for the removal of the dirt as the work progressed. A supplemental contract between the parties contained the following provision:

"Now, I hereby agree with the commissioners of said drainage district that, at any time subsequent to the date of which I shall begin work on said system of drainage and canals, and upon five days' notice in writing given me by the said board of commissioners of said drainage district to turn over to the said board of commissioners of said district the uncompleted work, to the end that said board have complete charge thereof from that date; and I further agree to go on with the performance of said work, to superintend the same, and to cause said work to be completed under the management and direction of the said board of commissioners at their expense, and as compensation for my services, from the date that said board of commissioners take over said work, I am to receive 15 per cent. of the cost of construction of said uncompleted work, the same to be paid me on monthly estimates by the said board until said work is completed."

Quarles subcontracted the work to R. L. Cheshire under written contract dated December 1, 1920, at the

price of thirty cents per cubic yard for moving earth, and the contract, after specifying all of the other items, contains a stipulation for an advancement of $25,000 for the cost of installation of the machinery, and also the following stipulation:

"The party of the first part agrees that, in event the board of commissioners of the Little Cypress Drainage District takes over the contract on cost-plus basis (as provided in contract executed between the commissioners and the party of the first part), that the party of the first part agrees to pay to the party of the second part an amount to equal all expenses that the party of the second part has paid out for securing equipment, which covers cost of plant, dismantling, transportation, erecting, and all other expenses by installation of equipment. Should the commissioners take over contract before equipment shall have excavated 50,000 cubic yards of excavation, the party of the first part agrees to pay the cost of operation, shall pay for all material on hand, such as supplies, and shall pay the party of the second part the amount of two thousand dollars ($2,000), which is to compensate the said party of the second part for installing equipment and starting the organization. The party of the first part shall be entitled to receive all pay on work completed, if same is taken over before machine has excavated the stipulated yardage."

On December 6, 1920, Cheshire subcontracted the work to appellant T. D. Hunt at twenty-five cents per cubic yard for the removal of earth, and the written contract between them contains the same stipulations as those referred to above in the contract between Quarles and Cheshire. The district advanced $25,000 in accordance with the contract, which was used in the purchase of machinery and other equipment, and the additional cost of installation of the machinery at the place of work ran the initial cost up to $32,881.63. After installing the equipment, appellant Hunt proceeded with the construction work, and, in addition to a certain amount of grubbing and clearing, he excavated and removed 73,850.70

cubic yards of earth. He was paid $8,447.10 on estimates, and nothing more has been paid to him or to Quarles. The commissioners then, under date of July 29, 1921, gave notice to Quarles, as principal contractor, of the election of the district to exercise the option in the contract for stopping the work and taking over the construction of the ditch. The work was accordingly stopped, and nothing further has been done toward the completion of the improvement. Assessments of benefits were made, and taxes levied and bonds were sold, and part of the money for the purchase price of the bonds was paid over to the commissioners.

Quarles subsequently brought suit against the district, alleging breach of the contract by the commissioners, and also alleging that he had held himself in readiness to comply with the contract, both as to the construction of the work on the original terms specified or on the cost-plus basis specified in the supplemental contract, and prayed for the recovery of compensation for the amount of work done as well as damages for being prevented from doing the remainder of the work.

Appellant Hunt also instituted a separate action against the district and against Quarles to recover the amount of earned compensation under his contract and for damages for breach of the contract.

These actions were instituted in the circuit court, but, on motion of the district, were transferred to the chancery court, and proceeded there to final trial and decree. The district answered, pleading the invalidity of Quarles' contract with the district on account of his having been engineer of the district in the formation of the plans, and also pleading that the contract was an improvident one and should be set aside. There were other denials with respect to the amount of outlay claimed by each of the appellants, and it was also denied that there were any damages sustained. The chancery court rendered a final decree dismissing Quarles' complaint for want of equity on the ground that the contract

with the district was void by reason of his former relation to the district as engineer. The court held that Hunt could recover from the district only on the *quantum meruit* basis, and, after stating his account with the district, brought him out in debt to the district in the sum of $14,288.22. The account between Hunt and the district was stated by the court in its decree as follows:

CREDIT.

| | |
|---|---|
| 73,850.70 cubic yards removed at 8½ per yard | $ 6,277.25 |
| Rental on drainage boat at $30 per day | 2,100.00 |
| Grubbing right-of-way | 1,800.00 |
| Additional cost of installation | 7,881.63 |
| Maintenance of organization during delay | 1,100.00 |
| Total | $19,158.88 |

DEBIT.

| | |
|---|---|
| Amount advanced for purchase and installation of equipment | $25,000.00 |
| Amount paid on estimates | 8,447.10 |
| Total | $33,447.10 |

Balance due from Hunt to district ........ $14,288.22

The court also in its decree declared a lien in favor of the district on the drainage boat, which was part of the equipment and on which advances were made, and held that appellant Hunt and his surety were liable on his bond executed during the pendency of the action for the return of the equipment if ordered by the court.

Learned counsel for appellee defend the court's decree on the ground that the contract of Quarles with the district was illegal and void, and that Hunt was entitled to recover only on *quantum meruit*, and that the court allowed him the amount to which he was entitled. Counsel base their contention on the decision of this court in the case of *Carter* v. *Bradley County Road Improvement District*, 155 Ark. 288, but we are of the

opinion that the rule announced in that case is not applicable to the present case. In the Carter case the engineer of the improvement district had, while serving as engineer for the State Highway Commission, entered into a contract with the road improvement district to do the engineering work, and this court held that he was not entitled to recover either on the contract or on the *quantum meruit,* notwithstanding the fact that the work was done after the claimant had severed his connection with the State Highway Commission. In the present case Quarles severed his connection with appellee district as engineer before he bid for the construction work, and this was done without any concealment, openly and with the approval of the attorney for the district as well as the commissioners. He resigned as engineer after all preliminary work had been done and the plans had been completed and approved. It was even after bids had been advertised for and received and no satisfactory bids had been made. There is nothing in the proof to justify the conclusion that there was any collusion between Quarles and the commissioners whereby he was to take advantage of his position as engineer for the purpose of securing an advantageous contract with the district. There is nothing to show that the resignation was a mere evasion of duties devolving upon Quarles as engineer. On the contrary, he had, as before stated, completed all of the engineering work to be done up to that time, and when the bid was made there were no official or confidential relations existing between Quarles and the district. He was perfectly free then to enter into a contract with the district, and we can perceive no principle of law that would forbid his doing so. Nor is the proof sufficient to justify the conclusion that the contract was an improvident one. The bid was much less than the bids received by the commissioners from other persons. There is testimony in the record of other work being done cheaper, and other testimony tending to show that the price stipulated for in Quarles' contract was too high, but we are of the opinion that the testimony as a

whole does not justify a finding that the contract was improvident or that the commissioners could, by the exercise of diligence, have secured a contract at a lower price. The contract entered into was free from fraud or collusion, and we can see no reason why it should not be upheld.

Our conclusion therefore is that Quarles' contract was valid and that he is entitled to recover earned compensation and for damages which arose, for which he should be allowed compensation as in other cases under settled principles of law.

Whatever appellant Hunt is entitled to recover, it must be under the contract and not on the *quantum meruit.* He had no contract with the district, for his contract was with Quarles, but, since Quarles and Hunt are both parties to this suit, Hunt should be allowed, in order to prevent circuitous actions, to recover directly from the district the amount he is entitled to under the contract and for which the district is liable under its contract with Quarles. Hunt is, of course, entitled to recover for the amount of excavation and removal of dirt at the stipulated price under his own contract with Quarles, and also for the price of the grubbing, which is undisputed. He is not entitled to recover anything from the district by way of damages for breach of contract, for the simple reason that the district did not break the contract so far as allowing the construction of the improvement to be made under the terms of the contract. The district in its contract expressly reserved the right and option of stopping the work at any time and completing the job. Hunt is bound, so far as any liability of the district to him is concerned, by the stipulations in the contract between Quarles and the district. It is a hard feature of the contract, but he can obtain no relief from it, for the reason that it became a part of his own contract. For the same reason he is not entitled to recover anything as reimbursement for the additional cost of the installation of equipment. Nor is he entitled to recover for the expense of maintaining a

crew while the equipment was idle. These are items purely of damages for breach of the contract, and, as we have already seen, there was no breach of the contract by the district so far as concerned Hunt, for the reason that the district reserved its right to stop the work at any time, and the stoppage of the work was not a breach but was within the reserved rights of the district. On the other hand, the district should not be permitted to deduct from its liability to Hunt for earned compensation the full amount advanced for the purchase of equipment. This is so because the district expressly agreed in its contract to claim the right of deduction only to the extent of ten cents per cubic yard of excavation and removal of dirt during the progress of the work. Having contracted to accept the return of the money in that way only, the district cannot, after having made an election to stop the work, insist upon the subcontractor returning the money advanced for the equipment. The account between Hunt and the district should be stated as follows:

CREDIT.

73,850.70 cu. yds. removed at 25c per yd............$18,462.67
Amount allowed on grubbing.................................. 1,800.00

Total .................................................................$20,262.67.

DEBIT.

Amount paid on estimates.........................$ 8,447.10
Amount of deduction at 10c per cubic
   yard for advancement on equip-
   ment .......................................... 7,358.70

Total .................................................................$15,805.80

Balance due Hunt...............................................$ 4,456.87

The decree in favor of Hunt should be for the balance stated above.

Turning to the claim of Quarles, we are of the opinion that he is entitled to recover from the district the balance of ten cents per cubic yard on the removal of earth by Hunt, which is the difference between the amount he is entitled to under his contract and the

amount to be recovered by Hunt under his contract. Quarles is entitled, under his supplemental contract with the district to fifteen per centum of the cost of the improvement made under his supervision. According to the undisputed evidence, it would have cost $140,000 to complete the work, and Quarles held himself in readiness to do the work when called on by the district, and was not able to obtain any other employment during the period which would have been covered by the completion of the work. He is therefore entitled to recover the compensation which he would have earned under the contract if performed. Quarles is also chargeable with the balance of the sum advanced by the district on equipment after deducting the amount charged to Hunt. Notwithstanding the stipulation in the contract for the deduction of the advancement on the estimates of work done, Quarles is responsible for the full amount, inasmuch as he is allowed under the contract to recover fifteen per centum of the total cost of the completion of the improvement. He stands in a different attitude from Hunt in this respect, for, under his contract, he was not cut off from earning additional compensation by the election of the district to complete the work itself. A fair interpretation of the contract is that the district had the right to stop the progress of the work under the contract and change to the cost-plus basis, and it should not be denied the return of the amount of money advanced merely because it made this change. Quarles took his chances under the contract on the loss of his equipment, and, if he claims the fifteen per centum on the cost of completing the work, he must return the money advanced for the equipment. Quarles' account with the district should therefore be stated as follows:

CREDIT.

73,850.70 cu. yds. removed at 10c per yd....................$ 7,385.07
Amount allowed, 15 per cent of cost of completing the work.................................... 21,000.00

Total ..................................................$28,385.07

DEBIT.

Balance of amount advanced for equipment,
    after deducting amount charged to Hunt.....$17,641.30

Balance due Quarles..................................................................$10,743.77

It is conceded that Quarles is entitled to recover this amount from the district. Both of the appellants are entitled to recover interest from the time of the commencement of their respective actions.

It is conceded by both Quarles and Hunt that there are items of account to be settled between them in this litigation, and that, on the remand of the cause, those matters will be either settled or litigated. We are not asked to decide any issue between them, but they ask that the cause be remanded for that purpose.

The decree of the chancery court is therefore reversed, and the cause remanded with directions to the court to enter a decree in favor of appellants Hunt and Quarles for the respective amounts stated above, with interest, and for further proceedings not inconsistent with this opinion.