HEMPHILL *v*. LEWIS:

Opinion delivered May 30, 1927.

1. TRIAL—TRANSFER OF CAUSE TO CHANCERY COURT—WAIVER OF OBJECTION.—Where, after a cause was transferred from the circuit to the chancery court, no motion was made to transfer it back to the circuit court, and no objection to the action of the chancery court in trying the cause, the objection to the forum was waived.

2. APPEAL AND ERROR—ERRONEOUS TRANSFER OF CAUSE TO CHANCERY. —An erroneous order of the circuit court transferring the cause to the chancery court may be corrected on appeal from the final judgment or decree.

3. LANDLORD AND TENANT—SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain a judgment in favor of a tenant in a suit against the landlord for the balance due on the tenant's crop against the contention that the tenant was liable as copartner on the landlord's claim against his father.

Appeal from Little River Chancery Court; *C. E. Johnson*, Chancellor; affirmed.

STATEMENT OF FACTS.

This was an action in the circuit court by B. Lewis against A. T. Hemphill for a balance alleged to be due

him from the proceeds of a share crop of cotton raised by him on the defendant's land. The defendant filed an answer, denying that he owed the plaintiff in any amount, and, by way of cross-complaint, asked judgment over and against the plaintiff and his father, C. J. Lewis, on account of a balance owed him by them for supplies furnished them with which to make a crop. C. J. Lewis filed a separate answer to the cross-complaint. B. Lewis also filed an answer to the cross-complaint, in which he denied the allegations thereof. During the progress of the trial in the circuit court, over the objections of both parties, the court withdrew the case from the jury, and, on its own motion, transferred it to equity. Without objection the case was heard and determined there, upon evidence which will be stated and referred to in the opinion.

The chancellor found the issues in favor of B. Lewis, and it was decreed that he should recover of A. T. Hemphill the sum of $525.96, together with the accrued interest. To reverse that decree A. T. Hemphill has duly prosecuted an appeal to this court.

*A. D. DuLaney* and *A. P. Steel,* for appellant.

*Shaver, Shaver & Williams,* for appellee.

HART, C. J., (after stating the facts). It is first insisted that the decree should be reversed because the case was erroneously tried in the chancery court. The record shows that, during the progress of the trial in the circuit court, over the objections of both parties, the case was transferred to equity. Both parties saved their exceptions to the action of the circuit court. The order of transfer from the circuit court to the chancery court discontinued the action in the former court but continued it in the latter court until it was disposed of there, either by trying the case or by transferring it back to the circuit court.

If the order of the court is erroneous, it can be corrected upon appeal from the final judgment or decree in the case. *Gilbert* v. *Shaver,* 91 Ark. 231, 120 S. W. 833;

*Vaughan* v. *Hill,* 154 Ark. 528, 242 S. W. 826; and *Nicholas* v. *Bright,* 154 Ark. 1, 241 S. W. 33.

When the case was transferred to the chancery court, no motion was made to transfer it back to the circuit court, nor were any objections or exceptions saved to the action of the chancery court in trying the case. Under these circumstances the case must be treated as an ordinary action instituted in the chancery court and tried there by consent. By not objecting to the jurisdiction of the chancery court the objection to the forum was waived. *Columbia Compress Co.* v. *Reid,* 160 Ark. 436, 254 S. W. 825, and *Ohio Galvanizing & Manufacturing Co.* v. *Nichol,* 170 Ark. 16, 279 S. W. 377.

It is next insisted that the finding of fact made by the court in favor of B. Lewis was wrong, and called for a reversal of the decree. We do not agree with counsel in this contention. The record shows that B. Lewis rented land from A. T. Hemphill in Little River County, Arkansas, for the year 1925. He made a crop on the shares and turned over the crop to Hemphill to be sold by him. After the payment of his account in the sum of $198 there remained due him, as his share of the proceeds of the crop, the sum of $525.96. He made demand of Hemphill for this amount, and the latter refused to pay him, on the ground that B. Lewis and C. J. Lewis, his father, owed him a balance on an old account for supplies furnished them in making crops in partnership during the years 1919, 1920 and 1921.

According to the testimony of A. T. Hemphill, the account for these years was in the name of C. J. Lewis, but the account was kept in this way for convenience. C. J. Lewis and B. Lewis were partners in making crops during the years they traded with him, and owed him a balance on said account in excess of the amount sued for in this action by B. Lewis. C. J. Lewis and B. Lewis indiscriminately would come to the store and purchase supplies, during the years above referred to, in behalf of the partnership.

According to the testimony of B. Lewis, he had nothing whatever to do with the account made by his father, C. J. Lewis, during the years above referred to. During these years he worked with his brother, Lloyd Lewis, in making a crop, and lived with him for the most part. His brother furnished the supplies with which they made the crop, and paid for them. When B. Lewis was at home, sometimes when at the store, he would purchase supplies for his father, when requested to do so. It was understood by A. T. Hemphill that B. Lewis was purchasing these goods for his father and that B. Lewis had no interest whatever in the account. During the years 1919, 1920 and 1921 C. J. Lewis lived in town with his daughters, and purchased goods from A. T. Hemphill on his own account.

Lloyd Lewis was a witness for B. Lewis, and in all essential respects corroborated his testimony. Other witnesses testified in the case, but their testimony does not have any direct bearing on the issues. The testimony of A. T. Hemphill is slightly corroborated by the witnesses for him. On the other hand, B. Lewis introduced other witnesses who, to some extent, corroborated his testimony.

The evidence above set forth, however, warranted the chancellor in finding that B. Lewis did not trade with A. T. Hemphill except during the year 1925, when he made a share crop on the defendant's place. He delivered all the cotton he raised that year to Hemphill, and it was sold by him. Lewis demanded the balance due him from the proceeds of his share of the crop, after paying his account for that year. This he was entitled to, and the chancellor properly rendered a decree in his favor for that amount. The chancellor made a specific finding that B. Lewis and C. J. Lewis, his father, were not partners during the years 1919, 1920 and 1921, and that B. Lewis was not responsible for the account for supplies furnished by Hemphill to C. J. Lewis for these years, and his finding is sustained by the evidence.

It follows that the decree of the chancellor was correct, and it will therefore be affirmed.