ÆTNA CASUALTY & SURETY COMPANY *v.* STATE.

Opinion delivered October 3, 1927.

1. APPEAL AND ERROR—IMPROPER TRANSFER FROM LAW TO EQUITY.— Where an order of the court transferring a case from law to equity is erroneous, such order can be corrected on appeal from the final decree in the case.

2. APPEAL AND ERROR—WAIVER OF OBJECTION.—Where a cause is transferred from the law to a chancery court without a motion to transfer it back and without objection or exception taken to the action of the chancery court trying it, the cause will be treated on appeal as an ordinary action instituted in the chancery court and tried there by consent, objections to the court's jurisdiction being waived.

3. BONDS—REAL PARTY IN INTEREST.—Where a bond was conditioned upon the return to the court upon its order of certain machinery, title to which was a subject of litigation, and it was shown that the plaintiff suing to enforce the bond had advanced money to aid in the purchase of the machinery, he was a real party in interest, though the bond was made to the State.

4. BONDS—CONSTRUCTION.—Bonds are to be construed like other contracts, and it is the duty of the court, if it can, to ascertain the intention of the parties, in doing which it is proper not only to examine the bond itself, but the order of the court authorizing and directing the bond to be given, and the claims of the parties and all the facts and circumstances connected with the making of the bond.

5. BONDS—ACCRUAL OF CAUSE OF ACTION.—A cause of action accrues upon a bond conditioned to do a certain act as soon as there is a default in performance, whether the obligee has suffered damage or not.

6. BONDS—FORFEITURE.—Where the court permitted the property to be removed from its custody upon executing a bond to return the property when ordered, a cause of action arose when the property was not returned as ordered by the court.

Appeal from Phillips Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

*Wm. M. Hall* and *Brewer & Cracraft,* for appellant.

*W. G. Dinning,* for appellee.

MEHAFFY, J.   This suit was brought by the appellee in the Phillips Circuit Court, the plaintiff alleging that T. D. Hunt, as principal, and the Ætna Casualty & Surety Company, as surety, executed and delivered, for a valuable consideration, its certain bond on that date to the State of Arkansas, whereby it agreed, among other things, that it would pay to the plaintiff the sum of $10,000 for the use and benefit of the commissioners of the Little Cypress Drainage District, or other parties interested in a certain suit pending in the Phillips Chancery Court, wherein John M. Quarles was plaintiff and Little Cypress Drainage District was defendant.   The condition of said bond was that, in event the principal, T. D. Hunt, should be permitted to remove from the jurisdiction of the Phillips County Chancery Court a certain dredge outfit then located in Phillips County, Arkansas, and should be permitted to use and operate said machinery during the pendency of this suit, and in the event of the failure of said T. D. Hunt to return said machine within the jurisdiction of this court, in the event an order for such return should be made after the title to said machinery had been determined by legal proceeding, then and in that event the said defendant agreed to pay the value of said machinery as of that date, or the sum of $10,000 as liquidated damages for the failure to return same.   That said bond was duly executed and delivered in the registry of this court.   Plaintiff further alleged that the title to said property had been adjudicated and that the court had made a proper order to return said equipment within the jurisdiction of the court, and that the limit named in the order had expired. That said Hunt had failed and refused to return the equipment, or any part thereof, and refused to pay the value thereof, and failed and refused to comply in any manner with the direction and order of the court, and had thereby breached the agreement, and that, by reason

thereof, the Ætna Casualty & Surety Company was indebted to plaintiff under said contract in the sum of $10,000, for which sum he prayed judgment.

The defendant answered, denying the material allegations in the complaint. The defendant, Ætna Casualty & Surety Company, then filed a motion to transfer to chancery, but afterwards filed an amended answer. The defendant asked and was granted permission to withdraw its motion to transfer, and thereafter the court, on its own motion, set aside the order permitting the defendant to withdraw said motion, and, upon the court's own motion, the cause was transferred to the chancery court.

We deem it unnecessary to set out the facts contained in the original case, but the facts in said case may be found in the opinion in *Quarles* v. *Little Cypress Drainage District,* 168 Ark. 368, 270 S. W. 501, and the evidence in this case, as far as deemed necessary, will be set out in the opinion.

Appellant's first contention is that the circuit court erred in transferring the case to the chancery court, and that the chancery court erred in taking jurisdiction of the case and attempting to give relief therein, in view of the shape the record was in at the time the transfer was made.

It appears from the record that this cause was transferred from the circuit court to the chancery court over the objections of the appellant. That order, however, was not appealed from, and the case was thereafter tried in the chancery court, there being no motion made by the appellant to transfer it from the chancery court to the circuit court.

This court said in a recent opinion:

"The record shows that, during the progress of the trial in the circuit court, over the objections of both parties, the case was transferred to equity. Both parties saved their exceptions to the action of the circuit court. The order of transfer from the circuit court to the chancery court discontinued the action in the former court, but continued it in the latter court until it was disposed

of there, either by trying the case or by transferring it back to the circuit court. If the order of the court is erroneous, it can be corrected upon appeal from the final judgment or decree in the case. *Gilbert* v. *Shaver,* 91 Ark. 231, 120 S. W. 833; *Vaughan* v. *Hill,* 154 Ark. 528, 242 S. W. 826; and *Nicholas* v. *Bright,* 154 Ark. 1, 241 S. W. 33. When the case was transferred to the chancery court, no motion was made to transfer it back to the circuit court, nor were any objections or exceptions saved to the action of the chancery court in trying the case. Under these circumstances the case must be treated as an ordinary action instituted in the chancery court and tried there by consent. By not objecting to the jurisdiction of the chancery court, the objection to the forum was waived. *Columbia Compress Co.* v. *Reid,* 160 Ark. 436, 254 S. W. 825, and *Ohio Galvanizing & Mfg. Co.* v. *Nichol,* 170 Ark. 16, 279 S. W. 377." *Hemphill* v. *Lewis, ante* p. 224.

We deem it unnecessary to call attention to other decisions on this point, because we think the recent case of *Hemphill* v. *Lewis* settles the question.

The parties tried the case in chancery court without making any motion to transfer it back to the circuit court, and thereby consented to the trial in the chancery court.

It is next contended that Quarles had no right to sue upon the bond; that it was payable to the State of Arkansas for the use and benefit of the commissioners of the Little Cypress Drainage District of Phillips County, Arkansas. It will be remembered that the bond was given in a suit in the Phillips Chancery Court, wherein John M. Quarles and T. D. Hunt were plaintiffs and the Little Cypress Drainage District was defendant. Hunt and Quarles were both parties to that suit. In that suit T. D. Hunt filed an application and motion for an order authorizing him to remove the drainage machine or dredge, located in the district, and it was alleged in that application that each of the plaintiffs, that is Quarles and Hunt, and the defendant district were claiming title to said machine, and that it had been idle

during the pendency of the suit, was depreciating in value, and should be put in use. And the court thereupon sustained the motion and made the following order:

"It is therefore adjudged and decreed by the court that, upon the execution of a bond with surety to be approved by the clerk of this court, in the sum of ten thousand dollars, to return said machine, with fair compensation for its use, or pay into court its value at this time, hereafter to be fixed, when the rights of the claimants are respectively adjudged, he, the said T. D. Hunt, will be authorized to remove said machine or dredge; the question of the title to the machine to be hereafter decided."

Hunt and Quarles and the drainage district were all parties and all present when the order was made, or rather, they all agreed to the order. Hunt then filed the bond, and the bond, among other things, contained this provision:

"Whereas J. M. Quarles has instituted a suit in the chancery court of Phillips County, Arkansas, against the commissioners of said drainage district, seeking to recover certain sums of money claimed by him to be due from said district, said cause being No. 4818; and, whereas the above bounden T. D. Hunt has also instituted an action of a similar nature against said drainage district, which suit has been consolidated with the suit of said J. M. Quarles; and, whereas, the said J. M. Quarles, T. D. Hunt and the commissioners of Little Cypress Drainage District claim title to an interest in a certain dredgeboat now located within the confines of said drainage district, and with which a portion of the work of excavation has been done; and, whereas, since the institution of said suit said boat has remained idle, and, as a result, has depreciated and is depreciating in value, and on the part of T. D. Hunt an order of said chancery court has been made authorizing him to remove said dredge or boat, with all of the appurtenances thereto belonging, upon the execution of a bond in the sum of $10,000, with good and sufficient surety for the return of said boat, or the payment of its value whenever the ques-

tion of the title to the same and the right of the parties, to said suits with reference to said boat are adjudicated, by the court. Now therefore, if the said T. D. Hunt, shall pay or cause to be paid into the clerk of the chancery court of Phillips County, Arkansas, the value of said boat at the present time, or return said boat to said court for purposes of disposition, in accordance with the orders, judgment and decrees of said chancery court thereto pertaining, then and in these events this bond shall be void, otherwise to be and remain in full force and effect.''

It is not disputed that the bond was given and that the order of court to return it was made, and that order not appealed from, and the bond expressly provides for a return of the boat to the court for the purpose of disposition, in accordance with the decree, orders and judgment of said chancery court. The title to the property has been adjudged to be in Hunt, but that does not mean that Quarles did not have any interest. The purpose of the bond was to have the boat in the jurisdiction of the court so that whoever had an interest in it might be able to protect that interest, and this could be done if the property was within the jurisdiction of the court, and otherwise it could not be done.

No one, before the court decided, seemed to know where the legal title was, but we think it wholly immaterial. If the legal title had been adjudged to be in Quarles, he would thereby have gotten paid for the money which he advanced, because it is undisputed that he did advance the money, or a sum greater than that which he now sues for, to purchase the boat. And this court found in the case in 168 Ark. that the district was due Hunt $4,456.87; and, although he had no contract with the drainage district, he did have a contract with Quarles, and all of them were parties to the suit. And that, since Hunt did have a contract with Quarles, and Hunt and Quarles were both parties to the suit, Hunt was allowed, in order to prevent circuitous actions, to recover directly from the district the amount he was entitled to under the contract, and for which the district

is liable under its contract with Quarles. And the court also held that there was a balance due Quarles of $10,743.77. It also held that both parties were entitled to interest, and it will be observed that one thing Quarles was charged with was $17,641.31, which amount was advanced to him for equipment, after deducting the amount charged to Hunt. It therefore appears that Quarles had paid the district the money that it had advanced to him to pay for this equipment. The money was used by Quarles and Hunt to buy the equipment, and the testimony of Quarles shows he paid the money and that it has never been paid back to him, and that there is now more due him than the amount of the bond.

The surety company, of course, was bound to know all these facts, because the bond was given in the suit, and recites that it was given in the suit. The statute provides: "Every action must be prosecuted in the name of the real party in interest, except as provided in §§ 1091, 1092 and 1094."

Unquestionably Quarles was the party in interest. He had advanced the money to Hunt to purchase the equipment, and, although the district had originally advanced it to him, in his settlement with the district he was charged with the amount advanced to him, and it was deducted from the amount the district owed him.

It appears therefore, from the evidence in the case, that Quarles had advanced considerably more than the $10,000 in payment of the dredge, that he was a party to this suit, and the suit was therefore brought in the name of the real party in interest. *Files* v. *Reynolds*, 66 Ark. 314, 50 S. W. 509.

A bond is to be construed like any other contract. It is the duty of the court, if it can, to ascertain the intention of the parties, and, in order to find out what the intention of the parties was at the time the bond was made, it is proper, not only to examine the bond itself, but the order of the court authorizing and directing the bond to be given, together with the interest and claims of the parties and all the facts and circumstances connected with the making of the bond. And when these

things are all considered with the bond, we are of the opinion that one of the purposes of the bond was to protect Quarles, who, at the time, claimed an interest in the property.

Application for an order permitting Hunt to remove the property and to give a bond was filed in court, and the order states: "And, it appearing that each of the plaintiffs and defendant district are claiming title to said machine." The plaintiffs were Quarles and Hunt, each of them claiming an interest in the machine. This language is in the order permitting Hunt to give the bond. The appellant, of course, was bound to know of this order, because the bond refers to the order.

The order further provided that the bond should be given to return the machine, with fair compensation for its use, or pay into court its value. And on these conditions, and upon giving the bond, Hunt was permitted to remove the property. The bond itself recites that Quarles has instituted a suit against the district, and that Hunt has instituted a suit against the district, and that these two suits have been consolidated. It further recites that Quarles, Hunt and the commissioners are all claiming title to the dredgeboat. The bond was conditioned that Hunt would return the boat or pay its value whenever the question of title was determined. And it was wholly immaterial what the determination of the court was as to the legal title, because, if he advanced the money, as he testified he did, he would certainly have an interest in having the boat returned.

It has been said:

"The one purpose of all construction and interpretation is to ascertain the intent actuating the parties to the agreement, if that end can be accomplished consistently with the rules of evidence. It may often appear (and does quite readily appear in the instant case) that to ascertain the real scope and effect of the bond necessitates reference to the facts and circumstances of the entire transaction of which it was a part. As said by this court in *Jacobs v. Jacobs*, 42 Iowa 605: 'The whole contract must be considered in determining the mean-

ing of any of its parts. The first point is to ascertain what the parties meant, and then to put such construction upon their contract as will bring it as near to their actual meaning as the words they saw fit to employ, when properly construed,  *  *  *  will permit. In arriving at this meaning the subject-matter of the contract, the situation of the parties and of the property, and the purpose of the parties in making the contract, must be considered.  *  *  *  The objects which the parties had in view in inducing the contract are also to be considered in its construction. As the actions of men are usually the index of their intentions, it is obvious that their acts may be proved, in connection with their contracts, in order to arrive at their true intention in regard to the obligations they assume and accept from others.' *U. S. Fidelity & Guaranty Co.* v. *Iowa Tel. Co.,* 174 Ia. 476, 156 N. W. 727.

It must be kept in mind that the order of the court required the return of the property to the jurisdiction of the court, and the bond was given to secure its return.

''A cause of action accrues upon a bond conditioned to do a certain act as soon as there is a default in the performance, whether the obligee has suffered damage or not.'' *Northern Assurance Co. of Eng.* v. *Borgelt,* 67 Neb. 282, 93 N. W. 226.

There is no dispute about the order of court being made, nor about what it is, and there is no contention that the order to return the boat has been complied with. Since the order of the court permitted Hunt to remove the property upon execution of the bond, and recited that Quarles claimed an interest in it, and since the court further ordered a return of the property, and the property was not returned, there was a breach of the condition of the bond which justified the bringing of the suit. Testimony was introduced tending to show, not only the value of the property, but the damage suffered by Quarles, and the chancellor's finding is not against the preponderance of the testimony.

The decree of the chancery court will be affirmed, and it is so ordered.