GRAY *v.* BREWER.

Opinion delivered June 4, 1928.

*T. A. Gray,* for appellant.

*Cole & Poindexter* and *S. M. Casey,* for appellee.

SMITH, J. Appellant brought this suit at law to recover the amount of a loss sustained by him in the purchase of 207 bales of cotton from appellee in the spring of 1919. He alleged that the sale of the cotton was evidenced by a written contract wherein appellee

guaranteed the weights of the cotton to be as represented at the time of the sale, whereas a loss of weight was sustained on nearly every bale purchased.

Appellee filed an answer, in which he denied that he had guaranteed the weights of the cotton, but alleged that appellant had bought the cotton on his own weights after weighing it himself.

Appellee moved that the cause be transferred to equity, and appellant saved an exception when that order was made. We think no error was committed in transferring the cause to equity. The sales in question represented several different transactions. The cotton was sold at various prices per pound, and the alleged loss of cotton involved a calculation as to the extent of loss as to each separate bale upon which a loss of weight is claimed. The account is therefore an involved one, if that question is reached, and it was therefore not improper to transfer the cause to equity for this reason. Moreover, no motion was made in the chancery court to transfer the cause back to the law court, nor was objection made to trying the cause in the chancery court, and the error, if any, was therefore waived. *Hemphill v. Lewis,* 174 Ark. 224, 294 S. W. 1010; *Ætna Casualty & Surety Co. v. State,* 174 Ark. 988, 298 S. W. 501.

There was a motion to quash certain depositions taken in behalf of appellee, but, as the testimony which was offered upon hearing this motion is not brought into the record, it will be conclusively presumed that the motion was properly overruled, as the depositions appear upon their face to have been properly taken.

The real question in the case is whether or not there was a guaranty of the weights of the cotton. Upon this issue the testimony on the part of appellant was to the following effect: Appellee is a merchant and cotton buyer in the city of Batesville, and sold the cotton to appellant under an express guaranty as to weights, which contract was evidenced by a writing signed by appellee. Appellant is a cotton buyer, and bought the cotton for the account of various brokers. In making

purchases it was customary to use a specially prepared invoice, having columns ruled so as to show the following items in regard to the bales purchased: Marks, number, weight, re-weight, our tag, price, amount loss, gain. Printed at the top of the invoice was the following notation: "Bought of ............................ B/C, by........................ Weights of cotton covered by this invoice are guaranteed by seller to be correct on date of delivery of same to consignee at Newport, Arkansas." Other blank invoices used by appellant did not have the name of the place of destination printed, but the destination was left blank, and was inserted at the time of concluding the contract of purchase.

The sales here in dispute were made in 1919 on the following dates: 4-3, 4-10, 4-22, 4-26, 4-30, 5-5, and 5-13, and nine blank invoice sheets were used. Appellant testified that, upon each purchase being agreed upon, appellee filled out a blank invoice, and in the space intended to show the name of the owner of the cotton, wrote his name, and in appropriate spaces wrote the marks, number and weight of the bales, and also signed his name on the face of the invoices.

Appellant testified, and offered testimony of other buyers to the effect that it was customary for the seller to guarantee the weights of the cotton at the compress where the cotton was to be compressed, and that, when the seller wrote his name in the space intended to show the name of the person from whom the cotton was purchased, this, according to the custom of the trade, was treated as a written contract of sale of the bales of cotton, the number and weight of which were written into the invoice, with a guaranty of weights at the designated place of destination. Appellant also offered testimony concerning the amount of the loss upon each of the bales where a loss of weight had been sustained.

Appellee testified that appellant negotiated with him for some days in regard to the purchase of the cotton before a sale was made; that appellant had a cotton yard, in which cotton belonging to various owners

was stored until it was ready for shipment, and that appellant weighed each bale as it was received in his yard, and made a charge for weighing and storage against each bale. Appellee had previously sold appellant cotton the weights of which were guaranteed, but he expressly refused to guarantee the weights of the cotton here in question, and he finally sold the cotton to appellant upon appellant's own weights and with the express understanding that there was no guaranty of weights. Upon completing the sale, appellant re-sampled and re-weighed the cotton in his own yard, and gave appellee a check for the contract price, which was duly paid.

Appellee admitted writing his name in the space showing the owner of the cotton sold, but denied writing his name on the face of the invoices, and there was testimony in regard to his handwriting which corroborated him in this respect.

The testimony shows that where Newport, Arkansas, was printed as the destination at which the cotton should be re-weighed, the name of that city was erased and Memphis, Tennessee, was inserted, and in the invoices, where no place was named as the destination, Memphis, Tennessee, was inserted as the destination. Appellant testified that appellee wrote Memphis, Tennessee, in each of the invoices as the place of destination, while appellee testified that he did not write the name of any place in any of the invoices as the point of destination. Appellee further testified that he used the blank invoices of appellant only because they were furnished him to make memoranda as to the marks, number and weight of the bales, and that there was no thought on the part of either party of making a written contract of sale, including a guaranty of weights.

At § 129 of the chapter on Contracts, 13 C. J. 306, it is said that: "It is not necessary that the signature of a party to a contract should appear at the end thereof. If his name is written by him in any part of the contract, or at the top, or at the right or left hand, with

intention to sign or for the purpose of authenticating the instrument, it is sufficient to bind him, unless subscription is required by law.''

At § 75 of the same chapter, page 277, it is said that: ''Where a person signs a document, he is not permitted to show that he did not know its terms, and, in the absence of fraud, he will be bound by its provisions. Therefore, when an action is brought on a written agreement which is signed by defendant, the agreement is proved by proving his signature, and, in the absence of fraud, it is wholly immaterial that he has not read the agreement and does not know its contents.''

Again, at § 76 of the same chapter, page 277, it is said that: ''A contract may be formed by accepting a paper containing terms. If an offer is made by delivering to another a paper containing the terms of a proposed contract, and the paper is accepted, the acceptor is bound by its terms; and this is true as a rule, whether he reads the paper or not.''

These are well recognized principles of law, and no useful purpose would be served in reviewing the cases cited in support of the text quoted in the notes thereto; but we do not think it appears, under the facts as herein summarized, that the court below ignored these principles in finding for the defendant and in dismissing the complaint as being without equity.

If the blank invoices had been tendered appellee as an offer to contract, and required only the insertion of the marks, number and weight of the cotton and the signature of appellee to make a complete written contract, we would hold that appellee had sufficiently signed the contract to make it valid as a written contract, the conditions of which he would not be heard to deny. But appellee testified (and was corroborated by two witnesses in that testimony) that the invoices were intended only to evidence the notations made by him thereon, to-wit, the marks, number and weight of the bales, and that there was no discussion or agreement concerning the destination where the cotton should be re-weighed, and

that the point of destination was written into the invoices by appellant after they had been delivered to him, without appellee's knowledge or consent, and without any authority, express or implied, so to do. Appellee further testified that, upon the contrary, this insertion on appellant's part, in so far as it apparently made a written contract of guaranty of weights, was done in disregard of an express understanding that there should be no contract to guarantee the weights, but that appellant should himself weigh the cotton and buy according to his own weights, and that this was done.

As we have said, the testimony is in irreconcilable conflict as to whether appellant or appellee wrote into the contract the point of destination, and as to whether appellee signed the invoices on the face thereof after the point of destination had been written in the invoices. The court made a general finding, both as to the law and the facts, in favor of appellee, and we are unable to say, after a careful consideration of the testimony, that the finding of the court upon the facts is clearly against the preponderance of the evidence; and if there was no written contract expressing all the essential terms of the agreement, no error was committed in admitting parol testimony to show what the agreement between the parties really was.

The decree of the court below must therefore be affirmed, and it is so ordered.