STIPSKY v. DROTAR.

4-2814

Opinion delivered January 16, 1933.

A. G. Meehan and John W. Moncrief, for appellant.

J. F. Holtzendorf, for appellee.

MEHAFFY, J. The appellee, Mike Drotar, brought suit in the Prairie Circuit Court against Metho Tucek, Jan Kajs and Joseph Stipsky. He alleged that he leased and rented to the defendants, for the year 1929, certain lands, which he described, for the sum of $300; that the appellants agreed to pay the sum of $300 on January 1, 1930. He alleged that $45 had been paid on the contract, and that there was a balance due of $255 and interest. The following is the contract sued on:

"Be it remembered that on this date, February 19, 1929, it is agreed between Mike Drotar and Metho Tucek, the first party agrees to rent all the land he owns in section 6 and section 1 in township one (1) south, range 6 west, for the sum of $300 for the year 1929.

"The second party agrees to pay the first party the sum of $300 on January 1, 1930.

"(Signed) Mike Drotar.
"(Signed) Metho Tucek.
"Jan Kajs
"Joseph Stipsky."

A demurrer was filed to the complaint, which stated that the complaint did not state facts sufficient to constitute a cause of action.

The court overruled the demurrer, and appellants, Jan Kajs and Joseph Stipsky, filed their separate answer, in which they denied that they entered into any agreement with Drotar, and denied that any contract was executed under which they obligated themselves to pay $300 or any other sum. They also denied that they had paid anything on the account.

Metho Tucek did not make any defense.

There was a jury trial and a verdict and judgment for $255, with no interest to date of judgment. Motion for a new trial was filed, overruled, and exceptions saved, and the case is here on appeal.

The appellee testified that on February 19 he entered into a contract in writing with the defendants, Tucek, Stipsky and Kajs, agreeing to rent all of his land in sections 1 and 6 for the year 1929 for $300; that he entered into a written contract; that the signatures at the bottom of the contract were the signatures of defendants.

There were 238 acres in the tract of land leased; that Tucek came over to appellee's place with Kajs before the contract was made, and Tucek wanted to rent the land. He did not know Tucek before this visit, and Tucek was accompanied by Kajs; that he had received $45 of the rent, and the balance due was $255. Kajs and Stipsky have never paid anything. He received no note evidencing the rent. He received three notes for the sale of some farm machinery sold to Tucek, and these notes were signed as sureties or indorsers by Kajs and Stipsky.

He was not present when the contract was signed by Kajs and Stipsky. He would not have let Tucek have the farm unless they would stand for it. They knew they were to pay. The contract was written by Genlisky and his daughter at the request of witness. Witness told them what to put in the contract. He does not know what Tucek said to Kajs and Stipsky to get them to sign the contract. He told Kajs if he would sign the contract he would give Tucek the place. Kajs agreed to stand good for it, and Stipsky also agreed to this.

The contract was then introduced in evidence. Kajs and Stipsky gave witness the contract and signed their names to it, and he knew it was all right. Witness had the contract made up and Tucek took it, got it signed, and brought it back. He told Kajs that he would not let Tucek have the land unless he stood for it.

Jan Kajs testified that he signed three notes to help Tucek buy some machinery from Drotar, but these notes only covered the purchase price of the machinery; that he signed the contract only as a witness; did not sign it as security; he never promised Drotar that he would pay the rent.

Drotar asked him for the rent after the contract was signed. He told Drotar before the contract was signed that he would not stand good for the rent. He took Tucek over to see Drotar, and introduced them, but the land was not rented at that time. Drotar did not say anything to him about standing good for the rent. He said nothing about either Kajs or Stipsky signing the contract to secure the payment of the rent. He did not tell Drotar that he would guarantee the payment of the rent, and he only signed it as a witness.

Joseph Stipsky testified substantially the same as Kajs. Both of them testified that they did not sign the contract with the intention of being bound by it, but signed it as witnesses.

Appellant urges a reversal, first, on the ground that the verdict is contrary to the evidence. The contract itself is ambiguous. The parties to this suit are all Slo-

vaks. The appellee speaks English, and testified, but it is apparent from his testimony, and the language used by him, that he understands very little about the English language. The appellants do not speak English at all, and their testimony was given through an interpreter.

Tucek desired to rent the land from appellee. He was a stranger, and appellee testified very positively that he would not rent him the land without appellants signing the contract, and the proof is undisputed that Kajs went to see the appellee with Tucek.

The contract was signed by appellants on the left-hand side of the paper. There is nothing on it to show that they signed as witnesses, and it made no difference where appellants signed the contract if it was their intention to sign the contract, not as witnesses, but for the purpose of being bound by the contract.

"It is not necessary that the signature of a party to a contract should appear at the end thereof. If his name is written by him in any part of the contract, or at the top, or at the right or left hand, with the intention to sign, or for the purpose of authenticating the instrument it is sufficient to bind him, unless subscription is required by law." 13 C. J. 306; *Gray* v. *Brewer,* 177 Ark. 486, 9 S. W. (2d) 81.

The question here is whether they signed the instrument as witnesses, or signed it with the intention of being bound, and, the contract itself being ambiguous, this was a question of fact to be determined by the jury.

None of the parties, as we have said, knew enough English to know how to write a contract, or to understand it when it was written in English.

The court instructed the jury as follows: Instruction No. 1. "The plaintiff brings this suit against these defendants, Kajs and Stipsky, upon what he contends is a contract entered into between himself and one Metho Tucek. Tucek admits his liability upon the contract, but the plaintiff contends that these two other defendants signed this instrument of writing with the understanding that they were to guarantee the payment under the con-

tract, whatever that amount is. Kajs and Stipsky deny this fact, but admit that they signed it, but only signed it as witnesses, and that they did not intend by their acts to make themselves liable thereon, but merely signed it as a witness. That presents a question of fact for the jury to determine whether or not they obligated themselves upon the contract when they signed it, in order to get Tucek the place. If you believe they did that, then your verdict will be for the plaintiff, but, on the other hand, if you believe that they only signed the contract as a witness, then they would not be liable on the contract, and your verdict will be for the defendants, Kajs and Stipsky. If you find for the plaintiff, the form of your verdict should be, we, the jury, find for the plaintiff in the sum of $............ If you find for the defendants, Kajs and Stipsky, the form of your verdict should be, we, the jury, find for the defendants. If nine of you gentlemen agree upon a verdict, the nine agreeing will sign their names thereto, but if all agree, you will only sign it by one of your body as foreman. Whatever your verdict is, return same into open court.''

Instruction No. 2. ''The plaintiff must prove the material allegations set up in his complaint by a preponderance of the testimony. A preponderance of the testimony doesn't necessarily mean the greater number of witnesses who might testify in the case, but it does mean upon whom the burden rests is required to offer competent testimony which outweighs, overbalances or preponderates in his favor.''

There is some conflict of authority as to the liability of one signing a contract in which he is not named, but, under the circumstances in this case, we think it was simply a question of the intention of the parties, and this was properly submitted to the jury, and its verdict will not be disturbed by this court.

It is next contended by the appellants that they were guarantors, and that it was void under the statute of frauds. We think the evidence is sufficient to justify the jury in finding that this was a contract signed by the ap-

pellants, and was binding on them. The jury might have found that they signed it as witnesses, and that finding would have been sustained by substantial evidence. The question was purely one of fact, and the verdict of the jury is supported by substantial evidence.

Finding no error, the judgment is affirmed.