COLLIE *v.* COLEMAN.

5-291                                  265 S. W. 2d 515

Opinion delivered February 22, 1954.

[Rehearing denied March 29, 1954.]

*Ed B. Cook,* for appellant.

*Bruce Ivy* and *Chas. P. Coleman,* for appellee.

WARD, J. The question raised on this appeal is: Are tenants entitled to a refund from cotton ginned by a Co-operative Gin Company, organized under Act 153 of 1939, where a profit is shown and where the rent contracts contemplate no such payments. The tenants here seek to reverse a decree against them.

Appellee, Charles R. Coleman, controls and rents a large body of cotton land, part of which he owns and the rest he controls as trustee. He is also a stockholder in the Little River Cooperative Gin Company which was organized in 1946 pursuant to said Act 153, and which co-operative will be hereinafter referred to as Little River. Fourteen of the appellants raised cotton on lands rented from Coleman for the years 1946, 1947, 1948 and 1949, agreeing to pay as rent one-fourth of the cotton produced. The three remaining appellants were sharecroppers for the same years under John Lott who was in turn a lessee of Coleman. All cotton raised by all appellants was ginned by Little River, and it is appellants' contention that they are entitled to a refund or patronage payments of their proportionate share of the profits realized by Little River for each of said years. The amount of refund due, if any is due, to each appellant is set out in evidence and is not questioned by Coleman or Little River. Practically all the essential facts are undisputed except

on one point which, for clarity of this opinion, we discuss first.

*Rental Contracts.* The contention is made by appellees that when the rent contracts with appellants were made it was agreed to and understood by all the renters that they were not to receive any refund or patronage. It appears from the record that Little River had not been incorporated when the rental arrangements were made for the year 1946. No written contracts were introduced but there is testimony that Coleman told the renters they would not get any refunds from the cotton ginnings. However, the effect of this testimony was that the renters were told they could receive refunds by making certain payments.

"Q. What agreement did you have with your various tenants pertaining to this; between you and the various plaintiffs who are plaintiffs in this case, with reference to patronage dividends?

"A. I told them at the beginning, when we started to talk about a gin and before the completion and organization, that if they wanted to share in the profits from the gin they would be allowed to take out stock on the same basis I took out stock. At that time we had not gone very far in making plans and thought we would have to put up $20 for each acre of cotton, and I told them that if they wanted to share in the profits if they would put up their $20 per acre they would be allowed to become members and share in the dividends; otherwise I would take the patronage dividends, that was the profits."

The condition proposed above on which the renters might receive refunds is not in accordance with the provisions of the By-laws of Little River and cannot be construed as an agreement by the renters to forego refunds to which they were entitled without the necessity of subscribing for stock.

On the other hand the renters stated that nothing at all was said about refunds when they rented the land. The record discloses that appellants, and apparently no

one else, gave any thought to refunds until this court rendered the opinion in *Houck* v. *Birmingham,* hereafter referred to, on June 12, 1950. The burden was on appellees to prove that when appellants entered into the rental contracts they also agreed to waive refunds to which they were entitled from cotton ginned by Little River, and we cannot say that the testimony discharges that burden.

Having concluded that appellees have not met the burden of proof on this point, our further consideration will be on the basis that the rental contracts were silent as to refunds or patronage payments.

*Refunds to Non-members.* Appellants rely on our opinion in the case of *Houck* v. *Birmingham,* 217 Ark. 449, 230 S. W. 2d 952, for a reversal in this case. The *Houck* case involved the same kind of cooperative gin, the same question relative to refunds, and other similar pertinent facts, and it was there held that sharecropper tenants were entitled to patronage payments. Three of the appellants here were sharecroppers, while the other appellants paid as rent one-fourth of the cotton raised. In the *Houck* opinion it was made clear that the latter class of renters were in a more favored position to claim refunds than were sharecroppers, so no distinction need be made between the two classes of renters in so far as it relates to this opinion.

In reply to appellants' reliance on the *Houck* opinion, appellees advance two arguments. First, that said opinion leads to an affirmance here, and, second, that the two cases are distinguished because the Articles of Incorporation and the By-laws of the two Cooperatives involved are not the same. We shall now examine these two arguments in the order mentioned.

*First.* Referring to the *Houck* opinion, appellees call attention to this language: "The nature of the cropper's right in the crops, or the proceeds thereof, depends upon the intent of the parties as ascertained from their contract." Based on this language the argument is made; that, before appellants can win they must show

it was their intent, when the rental contracts were entered into, to receive refunds, and; that no such intent is shown by the evidence. It is true that the evidence discloses no such intent on the part of the renters. In fact, it is specifically stated by appellants that they had no such intent because they never thought of refunds until the opinion in the *Houck* case was delivered. We think, however, that the above quoted language does not have the significance attached to it by appellees. The language was used in the *Houck* opinion in an effort to distinguish between the legal status of a sharecropper who receives one-half of the crop from his landlord and the status of one who pays one-fourth of the crop to his landlord. There the court was dealing with sharecroppers, and an analysis of the whole opinion shows clearly that they were entitled to refunds because of the provisions in the Articles of Incorporation and the By-laws of the Cooperative Gin and not because the sharecroppers intended or contracted to receive refunds when the rental contracts were made with their landlord.

*Second.* As indicated above, appellees make the argument that the opinion in the *Houck* case is not controlling here because the Articles of Incorporation and the By-laws in the Planters Cooperative, under consideration in that case, are not the same as the Articles of Incorporation and the By-laws in this case. Referring to the *Houck* case appellees state; "that case certainly is not in point with the case at bar. The By-laws of that cooperative were entirely different to the By-laws of the Little River Cooperative Gin, Inc." At another time appellees, in an effort to show that non-members are not entitled to refunds here, quote Article III in the By-laws of Little River which deals with qualifications for membership. Appellees' position in this connection is without merit. A careful comparison of the Little River Articles of Incorporation which appear in full in the record are exactly like the Articles of Incorporation considered in the *Houck* case, as is shown by a comparison of the records in both cases. The same thing is true of the By-laws of both cooperatives with the following non-essential

exception. In this case the Little River By-laws are copied in full in the record. In the *Houck* case some of the Articles of the By-laws are omitted entirely, but the following Articles do appear in full: Article III on Membership; Article IV on Non-member Patrons; Article X on Audits and Determination of Savings. The last mentioned Articles are exactly like the corresponding Articles in the By-laws of Little River and they are the only Articles in the By-laws that have any bearing whatever on the issue considered here.

In view of the above it is our conclusion that the opinion in the *Houck* case is controlling here, and it would serve no useful purpose to reiterate the reasons used and the conclusions reached in that case.

Our attention is called to the fact that appellants quoted only a part of Article IV of the By-laws pertaining to non-member patrons on which they rely for a reversal. That portion reads: ''Non-member patrons shall be treated the same as members and shall participate in the distribution of the earnings on the same basis,'' and it is noted that practically the same language is relied on in the *Houck* case. The inference is that other language in Article IV qualifies the language quoted above. We have carefully examined all the language in said Article IV as well as in the rest of the By-laws and in the Articles of Incorporation and nowhere do we find anything which prevents non-member patrons from participating in a refund such as they here claim.

Appellees ask us to dismiss the appeal because of appellants' failure to properly abstract the record as provided for in Rule 9, and also because the appeal is not properly taken. Conceding, without deciding, that appellants' abstract of the record was deficient, the deficiency was supplied by a fuller abstract by both the appellees and the appellants. In this situation, as we have often held, the appeal will not be dismissed.

It is pointed out by appellees that the record filed by appellants in this court is defective in that it was not signed by the attorneys, by the trial judge, or by the

clerk. In this connection we refer to the fact that prior to the decree in this case this court issued an order to the effect that litigants thereafter might appeal either under the old rules or under the provisions of Act 555. This order, of course, became void when the new rules promulgated by this court became effective on January 10, 1954. Appellants, therefore, had a right to perfect their appeal in accordance with said Act 555 which they chose to do. Under said Act it is not necessary for the attorneys or the trial judge to sign the record prepared by the court reporter. The act does provide, however, that the record which is to be filed in this court shall be verified by the clerk and by him transmitted to the clerk of this court. Actually this procedure on behalf of the clerk was not literally followed here. The record discloses; that the notice of appeal and designation of the record were given as required by said Act; that on September 10, 1953, a writ of ''Certiorari for Complete Record'' was issued by the clerk of this court to the clerk of the trial court directing him to certify to this court a full, true and complete transcript of the record and proceedings in the trial court, and; that the clerk of the trial court did on September 19, 1953, comply with said writ by certifying to the correctness of the record and filing the same with the clerk of this court. In the above situation it is our conclusion that the procedure above described was a substantial compliance with the provisions of Act 555. However, this ruling, being made when the attorneys had no opportunity to brief the new rules, is made with the reservation that if the same question is again presented to us it will be re-examined.

There are some other features of the case which call for further consideration by the trial court. Appellees plead the 3-year statute of limitations. This suit was filed on October 27, 1950, consequently appellants cannot recover any refunds which were due prior to October 27, 1947. It also appears that some of appellants may be indebted in some amounts to appellee, Coleman. Since these matters were not fully briefed and since they must be determined before the proper refunds can be made to

each individual appellant we have chosen to refer them to the trial court for further action.

In accordance with the views above expressed the decree of the trial court is reversed in so far as it pertains to Charles R. Coleman, and the cause is remanded with directions to make findings against him in favor of each of the appellants in accordance with the facts disclosed in the record, and for any other necessary proceedings not inconsistent with this opinion. For different reasons a majority of the court affirm the trial court's decree as to The Little River Cooperative Gin, Inc., which it is shown, has paid all refunds to Coleman.

The Chief Justice and Mr. Justice SAM ROBINSON dissent; Mr. Justice GEORGE ROSE SMITH not participating.

GRIFFIN SMITH, Chief Justice, dissenting. I think the Chancellor correctly determined the controversy from a factual standpoint and that his decretal findings are not being given the weight we have heretofore accorded transactions of this nature. The majority opinion sets out some of the testimony relating to the agreements between Coleman and appellants and then by a process of reasoning productive of a desired result, says that the conversations did not mean what Coleman said the understanding was, or if this were the intention, then subsequently-adopted by-laws took precedence over the oral accord.

I haven't the slightest doubt that the arrangements were exactly as Coleman said they were, hence I would affirm as to him. But if judgments must be rendered in derogation of every consideration given the case by a Chancellor whose judicial course has been outstanding in respect of diligence and capability, I would not excuse the gin company and require the landlord to pay this unusual price while at the same time saying that liability is contractual because of the by-laws.