COLLIE v. COLEMAN.

5-706                                              281 S. W. 2d 955

Opinion delivered June 27, 1955.

[Rehearing denied October 3, 1955.]

*Ed. B. Cook,* for appellant.

*Bruce Ivy* and *C. T. Coleman,* for appellee.

J. SEABORN HOLT, J. This is the second appearance of this case here. The opinion on the former appeal is now the law of this case, *Collie* v. *Coleman,* 223 Ark. 206, 265 S. W. 2d 515. In reversing the case we gave this directive: "The decree of the trial court is reversed in so far as it pertains to Charles R. Coleman, and the cause is remanded with directions to make findings against him in favor of each of the appellants in accordance with the facts disclosed in the record."

On remand the trial court appointed a Master whose primary purpose was to state an account between Charles R. Coleman and his individual tenants and the tenants of Red Bud Plantation, Charles R. Coleman, Trustee, based on the facts disclosed by the original record, already made. The Master took no additional testimony but called on appellees to furnish him a statement of the accounts on the amounts appellees contended appellants owed them and also called on appellants to examine the statement and determine whether they would agree to its correctness. According to the Master's request the statement was furnished to him and he was advised by the parties that they did not question it. The record reflected that all cash refunds due to the tenants (appellants) were held by the Cooperative Gin Company where

appellants had had their ginning done, and that some of these cash refunds were paid over to Charles R. Coleman in cash, but the greater part was used to purchase preferred stock in the gin company in the name of Charles R. Coleman. The Master in his report treated this stock as having been converted by Mr. Coleman as of the date the cash payments were paid to him, and that the stock's par value of $10.00 per share should be paid over by Coleman in cash (rather than in stock) to appellants.

The Chancellor in effect held, however, that the stock itself and not its cash par value should be surrendered and reissued to the appellants (tenants), and rejected so much of the Master's report which found that appellants, after deducting any off-sets due to Coleman, were entitled to all refunds in cash and no part thereof in stock.

The Chancellor's findings contained these recitals:

. . . "The Court now finds from the original record, the Mandate of the Supreme Court, the Report of the Master, Exceptions thereto by defendants Charles R. Coleman and Redbud Plantation, Reply by plaintiffs, and all pleadings and additional proof offered by the defendants, as follows:

"The original complaint was filed Oct. 27, 1950, against Charles R. Coleman and The Little River Cooperative Gin, Inc., and an amended complaint filed Oct. 23, 1951, making Redbud Plantation, Charles R. Coleman, trustee, and John Lott defendants. The statute of limitations prevents any of these plaintiffs not tenants of Charles R. Coleman from recovering anything prior to Oct. 23, 1948; that the ginning season was regarded as not closed until March 31st of the year following, so that the three tenants of Charles R. Coleman may have recovery as herein provided for 1947, 1948 and 1949, but all other tenants are limited to the years 1948 and 1949, as herein set out.

"The figures contained in the Master's Report are hereby found to be correct in so far as they apply to the findings of the court outlined herein, and is the purpose

of this court to recognize said figures as being correct, but in reaching the amount of recovery due these plaintiffs, the court has taken into consideration only the cash refunds actually made, together with interest thereon and for the years herein indicated. If it should be determined that this court is in error as to the statute of limitation and as to the amounts due these plaintiffs, references to the Master's Report will materially lessen the task of figuring these amounts.

"Based on these findings, the court finds that the plaintiffs are entitled to recover as follows:

"(1) Odie Canada, for his share of cash refunds for 1947, $17.34 and 6% interest thereon from April 1, 1948 to Nov. 1, 1954, $6.93, total $24.27. No ginnings for 1948 and 1949, so no recovery for those years. Total stock issued on his ginning for 1947 was $160.00, and he should have stock for ½ this amount, or $80.00.

"(2) J. A. McConnell, for his share of cash refunds for 1947, $20.67 and 6% interest from April 1, 1948 to Nov. 1, 1954, $8.26. No cash refund for 1948. For 1949 cash refund of $39.20, with interest April 1, 1950 to Nov. 1, 1954, $10.96. Total for the three years $79.09. Total stock issued on his ginning for the three years $560.00 and he should have stock for ½ or $280.00.

"(3) Lethia Sibley, no cash payments made for 1947, 1948 or 1949. Total stock issued $130.00, of which the tenant gets ½ or $65.00, with ¼ to Jessie L. Collie, and ¼ to landlord.

"(4) Jesse L. Collie, 1947 payments cut off by statute of limitation as he was tenant of Redbud Plantation; no payments were made in 1948, but for 1949 he should recover $46.50, with interest at 6% from April 1, 1950 to Nov. 1, 1954, $13.02, total $59.52. He would have no recovery because he owes Charles R. Coleman $315.32. Total stock issued on his ginnings, only for year 1948, $370.00, and his share would be ¾ of said amount, or $277.50.

"(5)  Floyd McConnell, can collect only for 1948 and 1949, but for these years no cash payments were made on his account. Total stock issued on ginning is for year 1948 in sum of $190.00, and he would be entitled to ½, or $95.00; with ¼ going to Jesse L. Collie in sum of $47.50, remainder to landlord.

"(6)  Jerry Jackson, 1947 payment cut off by statute of limitation; no cash payments made for 1948; and for 1949 cash payments due him $24.76, with 6% interest from April 1, 1950 to Nov. 1, 1954, $6.94, total $31.70. Stock issued only for 1948 in total sum of $170.00, and he is entitled to ¾, or $142.50.

"(7)  John Parnell, no recovery for 1947; cash payments for 1948 none, and not a tenant for 1949. Total stock issued on ginning for 1948 is $300.00, and of this amount he is entitled to ¾, or $225.00.

"(8)  Ben Tyson, cut off for 1947 by statute of limitation; no cash payments made for 1948, but for 1949 he is entitled to $26.86 and 6% interest from April 1, 1950 to Nov. 1, 1954, $7.51, total $34.37. Total stock only for 1948 $310.00, and he is entitled to ½, or $155.00.

"(9)  Willie Richardson, no recovery for 1947, and no cash refund for 1948; for 1949 he is entitled to recover cash refund of $16.10, with 6% interest from April 1, 1950 to Nov. 1, 1954, $4.50, or total of $20.60. No stock recovery for 1947, but for 1948 he is entitled to ¾ of $150.00 stock issued on his ginning, or $112.50.

"(10)  Harry Morris, not a tenant for 1947, none paid for 1948, and no ginning for 1949. Stock issued on his ginning for 1948 was $1,450, and he is entitled to ¾ of this amount, or $1,087.50.

"(11)  Charles Glenn was tenant only for 1948, and no cash payments were made. Total stock issued on his ginning was $270.00, and he is entitled to ¾ of this amount, or $202.50.

"(12)  Sam Jones was not a tenant for 1947, only for 1948, when no cash payments were made. Total stock

issued for 1948 was $250.00, and he is entitled to stock in amount of ½, or $125.00. Not a tenant for 1949.

"(13) Robert Howard, tenant only for 1947, and entitled to no recovery for that year.

"(14) Doffie Walls, tenant only for 1947, and entitled to no recovery for that year.

"(15) Caleb Tyson and Ethel Tyson, no recovery as the indebtedness at time of their death exceeds any amount for which recovery might be had."

The court entered a decree in accordance with these findings and directed that the stock be surrendered and cancelled and that the proportionate part due each of the appellants be issued to them and appellees were perpetually enjoined and restrained from withdrawing or accepting all or any part of the reserve and patronage accounts held by the Little River Cooperative Gin Company. Appellants were given judgment for cost against Charles R. Coleman in the court below in amount of $120.85 and for $61.50 for costs on appeal to the Supreme Court, total $182.35, and required Coleman to pay the Master's fee in amount of $200.00.

We have concluded that the findings of the Chancellor and the decree that followed are with one exception in full compliance with our directive and not against the preponderance of the testimony. The one exception is this: the Trial Court held that twelve of the tenants could not recover their refunds from the period of October 27, 1947 to September 27, 1948. We hold that these twelve tenants were entitled to recover their refunds beginning October 27, 1947. Our first opinion fixed that as the date. The motion filed on September 27, 1951 related back to the date that the first complaint was filed, which was October 27, 1950. The motion went to a matter of form and not of substance. Thus on remand the Chancery Court will allow these twelve tenants their rights beginning October 27, 1947. Affirmed in part and reversed in part.

260

Justice Millwee thinks the Master's Report should have been adopted.

Justice George Rose Smith disqualified.